PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

Recent No. 4 0000 2311

# IN THE UNITED STATES DISTRICT COURT
## FOR THE _Northern_ DISTRICT OF TEXAS
### _Fort Worth_ DIVISION

Allen "F" Calton # 1123880
Plaintiff's Name and ID Number

Powledge Unit
Place of Confinement

CASE NO. **4 - 23 CV - 1 1 9 4 P**

(Clerk will assign the number)

v.

See Attached Page 2
Defendant's Name and Address

Jury Trial Demanded

_____
Defendant's Name and Address

_____
Defendant's Name and Address
( DO NOT USE "ET AL.")

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 2 8 2023

CLERK U.S. DISTRICT COURT
By_____
Deputy

---

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be legibly  handwritten, in ink, or typewritten.  You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.**  ATTACH AN ADDITIONAL BLANK  PAGE AND  WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) , the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Section 1983 Complaint page 1 of 32    Rev. 05/15

## Statement of Jurisdiction

The U.S. District Court's jurisdiction is invoked pursuant to 28 U.S.C §§ 1331 and 1343 (a)(3) over all federal constitutional and statutory claims.

## Statement of Venue

The U.S. District Court Northern District of Texas, Fortworth Division is the appropriate venue under 28 U.S.C § 1391 (b)(1) because it is a Judicial district where some of the defendants reside and all of the defendants in this case reside in the state of Texas.

## Defendants Names and Addresses

(1) Thomas Wilder – Sued In offical and
    401 W. Belknap St.    Individual Capacities
    Fortworth, TX. 76196

(2) Spencer Johnson – Sued In offical and
    401 W. Belknap St.    Individual Capacities
    Fortworth, TX. 76196

(3) Bryan Gardine – Sued In offical and
    401 W. Belknap St.    Individual Capacities
    Fortworth, TX. 76196


Section 1983 Complaint page 2 of 32

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1.  In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00**.

2.  If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3.  The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee."   *See* 28 U.S.C. § 1915. Thus, the court is required to  assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4.  If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked "**NOTICE TO THE COURT OF CHANGE OF ADDRESS**" and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.   PREVIOUS LAWSUITS:

    A.   Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? $\checkmark$ YES ___NO

    B.   If your answer to "A" is "yes", describe each lawsuit in the space below.  (If there is more than one lawsuit, describe  the additional lawsuits on another piece of paper, giving the same information.)

        1.   Approximate date of filing lawsuit: *See Attached Pages 4-19*

        2.   Parties to previous lawsuit:

           Plaintiff(s) _____

           Defendant(s) _____

        3.   Court: (If federal, name the district; if state, name the county.) _____

        4.   Cause number: _____

        5.   Name of judge to whom case was assigned: _____

        6.   Disposition: (Was the case dismissed, appealed, still pending?) _____

        7.   Approximate date of disposition: _____

Section 1983 Complaint page 3 of 32

## I    Previous Lawsuits

### Suit #1

(1) Approximate date of filing lawsuit: 10-11-12

(2) Parties to previous lawsuit
   Plaintiff: Allen "F" Calton
   Defendants: City of Garland, Garland P.D., Shupe, Clark, Barba, Puckett, Lt. K.R. Davis and Chief Wilson, John Doe I and John Doe II

(3) Court: U.S. District Court Northern District of Texas Dallas Division

(4) Docket Number: 3:02-CV-2215-N

(5) Name of Judge: David Godbey

(6) Disposition: Jury Trial found in a favorable defendant verdict that Plaintiff take nothing on or about 3-5-05

(7) Approximate date of disposition: 3-15-05

### Suit #2

(1) Approximate date of filing Lawsuit: 10-11-12

(2) Parties to previous lawsuit:
   Plaintiff: Allen "F" Calton
   Defendants: Charlotte Ehlinger, Danny Shephard, Tracy Corson, Jerry Wimberly, Lt. Christian, Matthew Loewen, M. Reagen, Lt. Johnson, Lt. West, Dee Anderson, Chief Knowles and Chief Simon

(3) Court: U.S. District Court Northern District of Texas Fort Worth Division

(4) Docket Number: Civil Action No. 4:02-CV-845-A

(5) Name of Judge: John McBryde

(6) Disposition: Case dismissed pursuant to 28 U.S.C. §1915 (b)on 4-16-03 for lack of subject matter jurisdiction

Section 1983 Complaint page 4 of 32

## I   Previous Lawsuits

(7) Approximate Date Of Disposition : 4-16-03

### Suit #3

(1) Approximate date Of Filing Lawsuit : 5-8-03

(2) Parties to previous lawsuit:
Plaintiff : Allen "F" Calton
Defendants : Dr. Fagan, Dr. Loewen, Dr. Weight and Dr. Waggoner, and J.P.S. Health Network in care of David Cecero

(3) Court : 348 Th Judicial District Court, Tarrant County

(4) Docket Number : 348-198781-03

(5) Name Of Judge : Dana Womack

(6) Disposition : Plaintiff Non-Suited The Action

(7) Approximate date of disposition : 11-7-03

### Suit #4

(1) Approximate date Of Filing Lawsuit : Fall 2005

(2) Parties To Previous Lawsuit :
Plaintiff : Allen "F" Calton
Defendants : Cole, Teurman, Williams, Johnson, Mitchell, Walls, Terry, Dallas County, Mc Millan, Porter, Sheriff Bowles and Sheriff Valdez

(3) Court : U.S. District Court Northern District Of Texas Dallas Division

(4) Docket Number : Civil Action No. 4:05-CV-2022-N

(5) Name Of Judge : David Godbey

(6) Disposition : Dismissed in part for being Frivolous Pursuant to 28 U.S.C. § 1915 (A)(B)(1) and 42 U.S.C. § 1997 (e)(C)(1). Remaining Defendants Granted Summary Judgment

(7) 6-8-06 and 8-27-07 respectively

Section 1983 Complaint page 5 of 32

# I   Previous Lawsuits

## Suit #5

(1) Approximate date of Filing Lawsuit: 11-4-05

(2) Parties To Previous Lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Dr. Waggoner, Nurse Tucker, Jacqueline, Curtis, Ms. Chandler, Jane Doe, Harrison, D. Derusha, J. Thomas, San Hober, Felder, Collier, Gracia, J. Evans, Don Taylor, Sgt. Closner, O. Bailey, C. Garrett, Mr. Cole, C. Akomas, Gayle, Lt. Christian, John Doe, Tarrant County, J.P.S. Health Network, Sheriff Anderson, David Cecero, Chief Stromile Chief Simon, Gayle Gray

(3) Court: U.S. District Northern District of Texas Fortworth Division

(4) Docket Number: Civil Action No. 4:05 -CV-103-Y

(5) Name of Judge: Terry Means

(6) Disposition: Dismissal of all official claims against defendant, arising from several incidents pursuant to 28 U.S.C. § 1915 A and Alternatively § 1915 (e)(2)(B); Additional individual claims dismissed as frivolous and were later dismissed for failure to Administratively exhaust on 9-23-08 during Summary Judgment

(7) Approximate date of disposition: 9-23-08

## Suit #6

(1) Approximate date of Filing Lawsuit: 1-19-06

(2) Parties To Previous Lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Kuta, Hubbard, Bradford, Sgt. Ausmus, Lt. Perrin

(3) Court: U.S. District Court Southern District of Texas

(4) Docket Number: Civil Action No. 4:06-CV-00209

(5) Name of Judge: Kenneth Hoyt

(6) Disposition: Case dismissed pursuant to 28 U.S.C. § 1915 (2)(B)

(7) Approximate Date of Disposition: 3-16-06

Section 1983 Complaint page 6 of 32

## I  Previous Lawsuits

### Suit #7

(1) Approximate date of filing lawsuit : 7-28-08

(2) Plaintiff : Allen "F" Calton
Defendants : S. Lehman, S. Milhauser, Dr. Julito, T.T.U.H.C.S Pharmacy Committee, Denise Deshields, Tasha Janes, Ranee Lenz, Stephanie Zaped or Bill Toney, Owen Murray and Robert William

(3) Court : U.S. District Court Northern District Of Texas

(4) Docket Number : Civil Action No. 5:08-CV-152-B.G.

(5) Name of Judge : Nancy Koenig

(6) Disposition : Dismissed Pursuant to 28 U.S.C. §1915 (e)(2); 28 U.S.C. §1915 (A)(b) and 42 U.S.C. § 1997 e(c)

(7) Approximate Date of Disposition : 6-1-09

### Suit #8

(1) Approximate Date of Filing Lawsuit : 5-1-09

(2) Parties To Previous Lawsuit :
Plaintiff : Allen "F" Calton
Defendants : Samuel Hallman, Richard Tolles, Beverly Love, Lt. Krischke, Sgt. Cannalito, Carole O'Bryant, Jamie Williams, Christine O'Connor, Cynthia Luna, M. Warren, Brad Livingston, U.T.M.B, T.T.U.H.S.S.C, Denise Deshields, Owen Murray, Linnette Linthicum, Warden Ginsel, Teresa Moya, Mr. Rowlette, Tasha Janes

(3) Court : U.S. District Court Southern District Of Texas - Houston Division

(4) Docket Number : Civil Action No. 4:09-CV-01340

(5) Name of Judge : Sam Lake

(6) Disposition : Dismissed Pursuant to 28 U.S.C. §1915 (g)

(7) Approximate date of Disposition : 5-8-09

Section 1983 Complaint page 7 of 32

Suit #9

(1) Approximate Date Of Filing Lawsuit: 8-3-09

(2) Parties To Previous Lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Samuel Hallman, Richard Tolkes, Beverly Love, H. Krischkei Sgt. Carralito, Carole O' Bryant, Jamie Williams, Christine O'Connor, Cynthia Luna, M. warren, Brad Livingston, U.T.M.B, T.T.U. HSSC, Denise Deshields, Owen Murray, Cinnette Linthicum, Warden Ginsel, Teresa Moya, Mr. Rowlette, Tasha Janes

(3) Court: U.S. District Court Southern District Of Texas – Houston Division

(4) Docket Number: Civil Action No. 09-CU-02507

(5) Name of Judge: Nancy Atlas

(6) Disposition: Defendants Granted Summary Judgment on 5-27-11

(7) Approximate Date Of Disposition: 5-27-11

Suit # 10

(1) Approximate Date Of Filing Lawsuit: 2-24-12

(2) Parties To Previous Lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Warden motal, Capt. Hollman, officer Zimmerman, Dr Wright, Dr. Thompson, L. Randle, M. Stepherson, K. Stotts, Capt. Stepherson, A. Barker, J. Quick, L. Marshall, Sgt. Braun, officer Mc Croy, Mc Coy, officer Cline, C. Sherrick, Sgt. Ross, M. morgen, K. January, C. Marshall, Ramirez, M. Chaney, N. Bell, C. Harris, Mc Clanahan, Crawford, R. Criss, W. Warren, L. Quick, S. Belcher, K. Jennings, G. Wright, Billy Shelton, J. Boger, Capt. Jock, B. Raymond, Sgt. Cuba, D. Rhodes, P. Coleman, and Texas Board Of Criminal Justice

(3) Court: U.S. District Court Eastern District Of Texas – Tyler Division

(4) Docket Number: Civil Action No. 6:12-CU-87

Section 1983 Complaint page 8 of 32

## I    Previous Lawsuits

(5) Name of Judge: Leonard Davis

(6) Disposition: dismissed with prejudice pursuant to 28 U.S.C.
§1915 (g) on 3-12-12

(7) Approximate Date of Disposition: 3-12-12

<u>Suit #11</u>

(1) Approximate Date of Filing Lawsuit: 5-22-12

(2) Parties To previous Lawsuit:
Plaintiff: Allen "F" Calton
Defendants: Warden Motal, Capt. Holman, officer Zimmerman, Dr.
Wright, Dr. Thompson, L. Randle, M. Stephenson, Capt. Stephenson, K. Stotts,
A. Barker, J. Quick, L. Marshall, Sgt. Brown, officer McCray, McCoy,
Officer Cline, C. Sherrick, Sgt. Ross, M. Morgan, K. January, C. Marshall,
Ramirez, M. Chaney, N. Bell, C. Harris, Mc Clanahan, Crawford, R. Criss,
W. Warren, L. Quick, S. Belcher, K. Jennings, G. Wright, Billy Shelton,
J. Boger, Capt. Jock, B. Raymond, Sgt. Cuba, D. Rhodes, P. Coleman,
and Texas Board of Criminal Justice

(3) Court: U.S. District Court Eastern District of Texas - Tyler Division

(4) Docket Number: Civil Action No. 6:12-CV-344

(5) Name of Judge: Leonard Davis

(6) Disposition: Dismissed with prejudice pursuant to 28 USC §1915(g)
as to the refiling of another informa pauperis lawsuit raising the same
claims as herein presented, but without prejudice to the refiling of
the lawsuit without seeking in forma pauperis status and upon payment
of the statutory 350.00 filing fee

(7) Approximate Date of Disposition: 8-1-12

<u>Suit #12</u>

(1) Approximate Date of Filing Lawsuit: 3-22-13

(2) Parties To Previous Lawsuit

Plaintiff: Allen "F" Calton

Defendants: Warden Motal, Capt. Holmer, Officer Zimmermer, Dr. Wright, Dr. Thompson, L. Randle, M. Stepherson, K. Stotts, Capt. Stepherson, A. Barker, J. Quick, L. Marshall, Sgt. Brown, Officer McCray, McCoy Officer Cline, C. Sherrick, Sgt. Ross, M. Morgan, K. January, C. Marshall, Ramirez, M. Chaney, N. Bell, C. Harris, Mc Clarahan, Crawford, R. Criss, W. Warren, S. Belcher, K. Jennings, G. Wright, Billy Shelton, J. Boger, Capt. Jock, B. Raymond, Sgt. Cuba, O. Rhodes, P. Colener, Sgt. Iheanacho, Officer Williams and The Texas Board of Criminal Justice.

(3) Court: 349th Judicial District Court, Anderson County, Texas

(4) Docket Number: 349-7147

(5) Name of Judge: Pam Foster-Fletcher

(6) Disposition: Dismissed without Prejudice pursuant to Chapter 14 Tex. Civ. Prac. Rem Code

(7) Approximate Date of Disposition: 7-3-13

## Suit #13

(1) Approximate Date of Filing Lawsuit: 3-17-14

(2) Parties To Previous Lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Warden Motal, Capt. Holmer, Officer Zimmerman, Dr. Wright, Dr. Thompson, L. Randle, M. Stepherson, K. Stotts, Capt. Stepherson, A. Barker, J. Quick, L. Marshall, Sgt. Brown, Officer McCray, McCoy, Officer Cline, C. Sherrick, Sgt. Ross, M. Morgan, K. January, C. Marshall, Ramirez, M. Chaney, N. Bell, C. Harris, Mc Clarahan Crawford, R. Criss, W. Warren, S. Belcher, K. Jennings, G. Wright, Billy Shelton, J. Boger, Capt. Jock, B. Raymond, Sgt. Cuby, D. Rhodes, P. Colener, Sgt. Iheanacho, Officer Williams, Jose Chapa and Texas Board of Criminal Justice

(3) Court: U.S. District Court Eastern District of Texas - Tyler Division

Section 1983 Complaint   Page 10 of 32

## I    Previous Lawsuits

(4) Docket Number : 6:14-CV-212

(5) Name Of Judge : Leonard Davis

(6) Disposition : It was recommended by magistrate Judge John Love that Calton's Application To Proceed in Forma Pauperis should be denied due to three prior strikes which was adopted by the district Court.

(7) Aproximate Date of Disposition : May 2014

### Suit #14

(1) Approximate Date of Filing Lawsuit : 3-20-14

(2) Parties : Allen "F" Calton - Plaintiff
         Defendant : Lt. La morris Marshall

(3) Court : 3rd Judicial Court, Anderson County, Texas

(4) Docket Number : 3-42122

(5) Name of Judge : Mark Calhoun

(6) Disposition : Dismissed without prejudice on 5-7-14 because the Court found the claim to be frivolous or malicious. The Court also found the claims frivolous under chapter 14.003 (a)(b) and request is denied to proceed informa pauperis

(7) Approximate Date Of Disposition : 5-7-14

### Suite #15

(1) Approximate Date of of Filing Lawsuit : 5-1-14

(2) Parties : Allen "F" Calton - Plaintiff
         Defendants : Warden motal, Capt. Holman, Officer Zimmerman, Dr. Wright, Dr. Thompson, L. Ransle, M. Stephenson, R. Stotts, Capt. Stephenson, A. Barker, J. Quick, L. Marshall, Sgt Brown, Officer Mc Cray,

## I     Previous Lawsuits

Mc Coy, Officer Cline, C. Sherrick, L. Marshall, Sgt. Brown, M. Morgan, K. January, C. Marshall, Sgt. Ross, Ramirez, M. Chaney, N. Bell, C. Harris, Mc Clanahan, Crawford, R. Criss, W. Warren, L. Quick, S. Belcher, K. Jennings, G. Wright, Billy Shelton, J. Boger, Capt. Jock, B. Raymond, Sgt. Cuba, D. Rhodes, P. Coleman, Sgt. Iheanacho, Officer Williams, Jose Chapa, David Hensley, David Langston, Pam Pace-Moore and The Texas Board of Criminal Justice.

(3) Court: U.S. District Court, Eastern District of Texas - Tyler Division

(4) Docket Number: 6:14-cv-407-KNM

(5) Name Of Judge: Mitchell

(6) Disposition: Dismissed with Prejudice for Purposes Of In Forma Pauperis Proceeding pursuant to 28 U.S.C. §1915 (g)

(7) Approximate Date Of Disposition: 6-4-14

## Suit #16

(1) Approximate Date Of Filing Lawsuit: 6-2-14

(2) Parties
Plaintiff: Allen "F" Calton
Defendant: Lt. La Morris Marshall

(3) Court: 3rd Judicial District, Anderson County, Texas

(4) Docket Number: 3-42179

(5) Name Of Judge: Mark Calhoun

(6) Disposition: Dismissed As Frivolous and/or Malicious

(7) Approximate Date Of Disposition: July 2014

I    Previous Lawsuits

Suit #17

(1) Approximate Date Of Filing Lawsuit: 10-21-14

(2) Parties:
    Plaintiff: Allen "F" Calton
    Defendant: Edgar Baker Jr.

(3) Court: U.S. District Court Eastern District of Texas -Tyler Division

(4) Docket Number: 6-14- CV-00822

(5) Name of Judge: Nicole Mitchell

(6) Disposition: Dismissed without Prejudice For Failure To
    Exhaust administrative remedies pursuant to 42 U.S.C. § 1997
    (e) (a)

(7) Approximate Date of Disposition: November 2014

Suite #18

(1) Approximate Date Of Filing Lawsuit: 10-21-14

(2) Parties: Plaintiff Allen "F" Calton
    Defendant: Edgar Baker Jr.

(3) Court: 87Th Judicial, Anderson County, Texas

(4) Docket Number: 87-12151

(5) Name of Judge: Deborah Oakes

(6) Disposition: Dismissed As Frivolous or malicious November 2014

(7) Approximate Date of Disposition: November 2014

Suite #19

(1) Approximate Date Of Filing Lawsuit: 2-2-16

## I    Previous Lawsuits

(2)  Parties

Plaintiff : Allen "F" Calton

Defendants : Sgt. Kult , Officer Kwartert, Sgt. Hyatt, Christopher Homan, G. Ekeke , A. Breaux , H. Durant, Sgt. Harmon , R. Hanks, Sst. K. Jones, M. Guilbry , Ms. Matthews , J. Read , Captain Goodman

(3)  Court : 58th Judicial , Jefferson County , Texas

(4)  Docket Number : A-198064

(5)  Name of Judge : Kent Walston

(6)  Disposition : Dismissed Pursuant to Tex. Prac. Rem. Code F 11.056

(7)  Approximate Date of Disposition : 10-10-16

### Suit # 20

(1)  Approximate Date of Filing Lawsuit : 10-13-16

(2)  Parties :

Plaintiff : Allen "F" Calton

Defendant : Pinkie Patel , Dale Wainwright, Dr. Eckersley, Dr. Tucker Owen Murray , Linnette Linthicum , John Doe I, John Doe II , Robert Williams, Manual Hirsh , D.D.S. , Cheryl Andrew , Wanda Daigle , Carla Derouen and Texas Board of Criminal Justice

(3)  Court : U.S. District Court Eastern District of Texas Beaumont Division

(4)  Name of Judge : Marcia Crone

(5)  Disposition : Dismissed without Prejudice Due to the $100.00 Sanction out of the U.S. District Court Northern District of Texas

(6)  Docket Number : Civil Action No. 1:16-CV-429

(7)  Approximate Date of Disposition : 3-13-17

Section 1983 Complaint page 14 of 32

# I   Previous Lawsuits

## Suit # 21

(1) Approximate Date of Filing Lawsuit: July 2017

(2) Parties: Plaintiff: Allen "F" Calton
Defendant: Pinkie Patel, Dale Wainwright, Dr. Eckerley, Dr. Tucker, Owen Murray, Annette Linstrum, John Doe I, John Doe II, Robert Williams, manual Hirsh, D.D.S., Cheryl Andrew, Wanda Daigle, Carla Derouin and The Texas Board of Criminal Justice

(3) Court: U.S. District Court Eastern District of Texas - Beaumont Division

(4) Name of Judge - Marcia Crone

(5) Disposition:

(6) Docket Number: Civil Action No. 1:17-CV-00239

(7) Approximate Date of Disposition.

## Suit #22

(1) Approximate Date of Filing Lawsuit: 9-23-21

(2) Parties: Plaintiff: Allen "F" Calton
Defendant: David G. Gutierrez, Janes La Favers, Carmella Jones, Ed Robertson, D'wayne Jennison, Brian Lara and Linda Molina

(3) Court: U.S. District Court Western District of Texas - Austin Division

(4) Name of Judge: Lee Yeakel

(5) Disposition: Plaintiff moved to voluntary Dismiss FRCP 41

(6) Docket Number: Civil Action No. 1:21-CV-846-LY

(7) Approximate Date of Disposition: November 4, 2021

Section 1983 Complaint  page 15 of 32

# I    Previous Lawsuits

## Suit #23

(1) Approximate date of filing lawsuit : 8-16-22

(2) Parties to previous lawsuit :
Plaintiff : Allen "F" Calton
Defendants : Sharen Wilson, Amy Byrum and Hannah Bell

(3) Court : U.S. District Court Nothern District of Texas, Fort worth Division

(4) Docket Number : 4:22-cv-710-p

(5) Name of Judge : Judge Mark Pittman

(6) Disposition :

(7) Approximate date of disposition

## Suit #24

(1) Approximate date of filing lawsuit : 9-6-22

(2) Parties to previous lawsuit :
Plaintiff : Allen "F" Calton
Defendants : U.S. Supreme Court and Chief Justice John Roberts and Justices Samuel Alito Jr. Sonya Sotomayer, Elena Kagan, Neil Gorsuch, Brett Kavanaugh, Amy Coney Barrett, Ketanji Brown Jackson and Clarence Thomas

(3) Court : U.S. District Court For The District Of Columbia.

(4) Docket Number : 1:22-cv-02861

(5) Name of Judge : Timothy J. Kelly

Section 1983 Complant page 16 of 32

# I    Previous Lawsuits

(6) Disposition:

(7) Approximate date of disposition:

## Suit #25

(1) Approximate date of filing Lawsuit: 9-13-22

(2) Parties to previous lawsuit:

Plaintiff: Allen "F" Calton

Defendants: Judges Sharon Keller, Mike Keasley, Barbara P. Hervey, Bert Richardson, Kevin P. Yeary, David Newell, Mary Lankeel, Scott Walker and Michaelle Slaughter

(3) Court: U.S. District Court Western District of Texas Austin Div.

(4) Docket Number: 1:22-CV-00927-RP

(5) Name of Judge: Robert Pitman

(6) Disposition:

(7) Approximate date of disposition

## Suit #26

(1) Approximate date of filing lawsuit: 9-16-12

(2) Parties to previous lawsuit:

Plaintiff: Allen "F" Calton

Defendants: U.S. Court of Appeals, Fifth Circuit, Justice Samuel Alito Jr. and Circuit Judges Owen, Willet, Ito, Smith, Haynes, Stewart, Oldham, Davis, Southwick, Elrod

Section 1983 Complaint page 17 of 32

## I    Previous Lawsuit

Jones, Jolly, Garza, werner, Groves, Higgins botham, Dennis, King and Circuit Judges John or Jane Doe 1 thru 10

(3) Court : U.S. District Court Eastern District of Louisiana

(4) Docket Number : 2:22-CV-03392-NJB-KWR

(5) Name of Judge : Nanette Johvette Brown

(6) Disposition : Official Capacity Claims dismissed for lack of Jurisdiction. Incapacity Capacity Claims dismissed pursuant to 28 u.s.c. § 1915 A

(7)    Approximate date of disposition : 3-6-23

### Suit #27

(1) Approximate date of Filing Lawsuit : 2-24-23

(2) Parties to previous Lawsuit :
   Plantiff : Allen "P" Calton
   Defendants : Texas Department of Criminal Justice, Texas Board of Criminal Justice, Bryan Collier, Patrick L. O'Daniel, Oscar mendoza, Alphonso Rayford, Cuetto, Joseph C. Obi, Cyril C. Onyemaechi, Debra Gloor, Dr. Tupa

(3) Court : U.S. District Court, Western District of Texas, San Antonio Div

(4) Docket Number : S-23-CV-00231-FB

(5) Name of Judge : Fred Biery
(6) Disposition : Pending

Section 1983 Complaint page 18 of 32

## I Previous Lawsuit

(7) Approximate date of disposition: Pending

### Suit #28

(1) Approximate date of Filing Lawsuit: 2-27-23

(2) Parties to Previous lawsuit: Plantiff - Allen "P" Calton
    Defendants: Stephanie M. Bradley, Victoria E. Rodriguez

(3) Court: U.S. District Court, Western District of Texas San Antonio Div.

(4) Docket Number: S-23-CV-00245-FB

(5) Name of Judge: Fred Biery

(6) Disposition: Pending

(7) Approximate date of disposition: Pending

### Suit #29

(1) Approximate date of Filing Lawsuit: 2-27-23

(2) Parties to Previous lawsuit: Plantiff - Allen "P" Calton
    Defendants: Scott S. Harris

(3) Court: U.S. District Court D.C. District Court

(4) Docket Number No. 23-01399 (ABJ)

(5) Name of Judge: Amy Berman Jackson

(6) Disposition: Dismissed for want of Jurisdiction

(7) Approximate Date of Disposition: 5-23-23

Section 1983 Complaint page 19 of 32

II.    PLACE OF PRESENT CONFINEMENT: _Powledge Unit_

III.    EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?    ___YES    ___NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.
Not applicable to this suit

IV.    PARTIES TO THIS SUIT:    Allen "F" Calton # 1123880

A.    Name and address of plaintiff: _Powledge Unit_
_1400 FM 3452_
_Palestine, TX. 75803_

B.    Full name of each defendant, his official position, his place of employment, and his full mailing address.

Defendant #1: _Thomas Wilder - District Clerk of Tarrant County_
_401 W. Belknap St, Fort Worth, TX. 76196_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_Allowed custom to refuse to file federal writ in state court_

Defendant #2: _Spencer Johnson - Deputy District Clerk Tarrant County_
_401 W. Belknap St, Fort Worth, TX. 76196_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_Refused to meaningfully file federal writ in state court_

Defendant #3: _Bryan Gardne - Deputy District Clerk Tarrant County_
_401 W. Belknap St, Fort Worth, TX. 76196_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_Refused to meaningfully file federal writ in state court_

Defendant #4: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

Defendant #5: _____

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.
_____

Section 1983, Complaint page 20 of 32

V.    STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how each defendant is involved. You need not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely.  IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

_See Attached Pages 22-_

VI.    RELIEF:

State briefly exactly what you want the court to do for you.    Make no legal arguments.  Cite no cases or statutes.

_See Attached pages specifically describing punitive and nominal damages and prospective relief sought herein pages_

VII.    GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

_Allen "F" Calton   Allen Fritzgerald Calton   Allen Fitzgerald Calton_

B. List all TDCJ-CID identificaiton numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

_# 420380    # 484586    # 1123880_

VIII.    SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed?  _✓_YES ____NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.   Court that imposed sanctions (if federal, give the district and division): _See attached page 31_

2.   Case number: _____

3.   Approximate date sanctions were imposed: _____

4.   Have the sanctions been lifted or otherwise satisfied?    _✓_ YES ____NO

_Section 1983 Complaint page 2 of 32_  Rev. 05/15

## V  Statement Of Claim

(1) On 8-14-23 Allen "F" Calton [Hereafter referred to as Calton] signed into effect his "Federal Petition For Writ of Habeas Corpus under Federal Law Filed In State Court under Concurrent Jurisdiction It Has with Federal Courts TO Secure Rights under The Laws Of The United States". Along with additional papers in support thereof.

(2) The mailpiece containing the aforementioned petition and supporting papers was mailed on 8-14-23 and was received in the Tarrant County mailroom on 8-21-23

(3) The Federal Habeas Corpus Petition Calton sought to file with a state court in Tarrant Court under a State concurrent Jurisdiction with federal courts. In Calton's attempt to initiate a Federal Habeas Proceeding under Federal Law, To be resolved under Federal law in a state court was file marked dated 8-29-23.

(4) Although Calton's Federal Habeas Petition and documents were file marked with the date 8-29-23 thereon. No cause number or case number was assigned to this Federal Habeas Proceeding Filed in State Court. Nor was the case assigned to a

Section 1983 Complant  page 22 of 32

## II. Statement of Claim

state court for resolution in an adversarial proceeding by deputy clerk Spencer Johnson that day on 8-29-23.

(5) In fact despite numerous requests to the Tarrant County District Clerk's office beginning on September of 2023 inquiring about the case number or cause number and state court the case was assigned to. Calton has not received any response to his multiple letter inquiries.

(6) Calton also wrote District Clerk Thomas Wilder himself on 10-25-23 and again on 11-10-23 inquiring about the case and putting him on direct notice of Calton's inability to meaningfully file his Federal Habeas petition in state court to the extent that the operation of law would proceed in an adversarial proceeding. Between Calton and Respondents and/or their representatives. See Exhibit "A" and "B" for letters dated 10-25-23 and 11-10-23 respectively to Thomas Wilder himself. Thomas Wilder never responded at all whatsoever.

(7) This letter was also forwarded to Judge Chris Wolfe the presiding Judge of the 213th Judicial Court the Court of Conviction resulting in Calton's unlawful restraint and illegal incarceration. Calton

## V Statement of Claim

seeks to call into question and collaterally attack with the Federal Habeas Petition he seeks to meaningfully file in state court. See Exhibit "A" and "B", supra.

(8) Deputy Clerk Spencer Johnson is the clerk who refused to file Calton's documents on 8-29-23 to the extent that the documents initiated a new suit and adversarial proceeding. In that it was assigned a cause or case number and assigned to a court to resolve the matter as the law requires.

(9) Spencer Johnson merely file marked the documents i.e. Calton's Federal Habeas Petition and supporting documents on 8-29-23 and nothing more to happen.

(10) On 10-23-23 and 10-24-23 Calton's nephew Deadrian Tutt as a courier personally delivered for filing another copy of Calton's "Federal Petition For Court Of Habeas Corpus under Federal Law Filed In State Court To Secure Rights under the Laws Of The United States" Along with another set of additional papers in support thereof.

(11) This time on 10-23-23 and 10-24-23 Deputy Clerk Bryan Gardner again merely file marked the papers with the date of 10-23-23 and 10-24-23

Section 1983 Complaint page 24 of 32

## II  Statement Of Claim

and nothing more. Without assigning a cause or case number to the papers. Nor did Bryan Gardne assign the case to a State Court for resolution on 10-23-23 or 10-24-23.

(12) The reason that Spencer Johnson and 8-29-23 and Bryan Gardne on 10-23-23 and 10-24-23 refused to meaningfully file Calton's papers to the extent of initiating a new lawsuit with resolution to be had thereon. Was not due to lack of filing fee or insufficieny in Calton's papers. Not so.

(13) As established by the conversation Calton's nephew Deadman Tutt had with Spencer Johnson on 11-13-23, Deputy Clerk Spencer Johnson told Deadman Tutt that he was familiar with Calton and Calton's previous filings and knew what Calton was trying to do.

(14) Spencer Johnson then told Deadman Tutt on 11-13-23 that it is the practice of the Deputy District Clerks of Tarrant County office to not file Federal Habeas Petitions in a meaningful manner to the extent that the case would be assigned a cause or case number and be assigned to a court for resolution.

(15) Spencer Johnson continued on 11-13-23 by informing Deadman Tutt that Calton's Federal

Section 1983 Complaint  page 25 of 32

## II Statement of Claim

Habeas Petition Calton wanted to meaningfully file in State Court. Was only merely file marked and nothing more. There would be no response thereto nor would Calton receive any action thereon. As the Federal Habeas Petition Filed in state Court would be presented to no court or addressed by anyone beyond being merely file marked stamped

(16) Deputy Clerk Spencer Johnson concluded on 11-13-23 by stating: "That any Federal Habeas Petition Filed with The Tarrant County District Clerk's office would receive nothing more than a file mark date stamp and that's all. With nothing more to be expected on Federal Habeas Petitions Filed with the District Clerk's office."

(17) As established by the fact that's exactly what Spencer Johnson did on 8-29-23. When he received Calton's Federal Petition that day and supporting papers. See Exhibit "C" hereto attached incorporated for Calton's Federal Petition Filed in state Court. Although file marked 8-29-23 is sans an assigned case or cause number. Nor was it assigned to a state Court. Just merely bearing the file mark stamp dated 8-29-23.

(18) As further established by that exactly what Bryan Gardne did on 10-23-23 and on 10-24-23.

Section 1983 Complaint page 26 of 32

## I. Statement Of Claim

When Calton attempted to meaningfully file his Federal Habeas Petition in a State Court for resolution. A second time this time in person via his nephew Deadrian Tutt.

(19) Driving home the matter is after nearly 90 days since initially filing his Federal Habeas Petition in the State Court on 8-29-23. Calton has not received a cause or case number or what State court the case is assigned despite numerous inquiries to the Clerk's office.

(20) Nor has Calton received any type of order from a State court or any response from the Tarrant County District Attorney office or the Attorney General of Texas or Respondent. Nothing as the acknowledgment of the meaningful filing of his Federal Habeas Petition.

(21) Establishing what Spencer Johnson told Deadrian Tutt on 11-13-23 is the truth of the matter. Concerning any Federal Habeas Petition filed with the District Clerks office i.e. No action or response by anyone would be had on such cases. Such Federal Petitions would be file marked as a formality. As that was the practice of the Deputy District Clerks presented with Federal Habeas presented to be filed in State Court.

(22) Spencer Johnson concluded also by telling Deadrian Tutt that Calton must file his federal

Section 1983 Complaint  page 27 of 32

## I. Statement of Claim

Habeas Petition in the Federal Court. And would not be able to meaningfully File a Federal Habeas Petition with the Tarrant County District Clerk office. Any Federal Habeas Petition presented to the District Clerk's Office would be file marked and that's it.

(23) Such action by Spencer Johnson and Bryan Gardner deprived Calton from attacking his criminal conviction in the only available forum to press his merito-rous non-frivolous claims under Federal law. Con-tained in his Federal Habeas Petition. See Calton's Federal Habeas generally at Exhibit "C" hereto attached and incorporated. That Calton has a constitutional right to file in state court under its concurrent Jurisdiction with Federal Courts.

### Causes Of Action

### Number one: Thomas Wilder - District Clerk

(24) Calton incorporates the previous paragraphs as if alleged herein and further pleads: That Thomas Wilder put in place the practice or custom or al-lowed the practice or custom of his Deputy Clerks to refuse to meaningfully file Federal Habeas Petitions presented by State prisoners to be filed in State Court. In violation of Calton's right to Due process and Access To Court protected by the First and Fourteenth Amendments.

Section 1983 Complaint page 28 of 32

# II Statement Of Claim

## Number Two: Spencer Johnson

(25) Calton incorporates the previous paragraphs as if alleged herein and further plead: That Spencer Johnson deliberately and maliuously refused to meaningfully file Calton's Federal Habeas Petition and supporting papers on 8-29-23. Calton attempted to meaning-fully file with a state Court. In violation of Calton's right to Due Process and Access To Court Protected by the First and Fourteenth Amendments.

## Number Three: Bryan Gardne

(26) Calton incorporates the previous paragraphs as if alleged herein and further plead: That Bryan Gardne deliberately and maliuously refused to mea-ningfully file Calton's Federal Habeas Petition and sup-porting papers on 10-23-23 and 10-24-23. Calton attempted to meaningfully file with a state Court. In violation of Calton's right to Due Process and Access To Court Protected by the First and Fourteenth Amendments.

## VI  Relief

Wherefore premises considered, Calton respectfully prays and moves that this Court:

(1) Enter a Declaratory Judgment declaring that the acts and/or omissions described above in refusing to meaningfully file Calton's Federal Habeas Petition to the extent that its assigned a cause number and assigned a court violated Calton's rights under the Constitution and Laws of the United States.

(2) Enter preliminary and permanent injunctions ordering defendants Thomas Wilder, Spencer Johnsen and Bryan Godine to meaningfully file Calton's Federal Habeas Petition To The extent that its assigned a cause number and assigned to a court for resolution as law requires.

(3) Enter a Judgment in favor of Plantiff for nominal and punitive damages in the amount of one dollar and **five** hundred thousand dollars respectively against each of the defendants Jointly and severally with post judgment interest

(4) Order such additional relief as the court deems proper

(5) Order that costs be taxed against defendants

Section 1983 Complaint page 30 of 32

## Sanction Warnings

#1

(1) Court that imposed warning of sanctions: U.S. District Court, Northern District of Texas Fort Worth Division

(2) Case Number: 4:13-CV-885

(3) Approximate date warning were imposed: Fall of 2013

#2

(1) Court that imposed warning of Sanctions: 5th Circuit

(2) Case Number: U.S.C.A No. 19-11206

(3) Approximate date warning were imposed: 11-26-19

## Sanctions Imposed

#1

(1) Sanction imposed by: U.S. District Court, Northern District of Texas, Fortworth Division

(2) Case Number: 4:14-CV-139

(3) Approximate date of Sanction: Spring of 2014

(4) $100.00 sanction was paid in 2017

#2

(1) Sanction imposed by: U.S. Court of Appeals 5th Circuit

(2) Case Number: No. 21-10295

(3) Approximate date of Sanction: 4-26-21

(4) $100.00 Sanction was paid Summer 2021

Section 1983 complaint page 31 of 32

C. Has any court ever warned or notified you that sanctions could be imposed? ✓ YES ____ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

1. Court that issued warning (if federal, give the district and division): _See Attached p.31_

2. Case number: _____

3. Approximate date warning was issued: _____

Executed on: _11-20-23_
DATE

_Allen "F" Calton_

_Allen "F" Calton_
(Signature of Plaintiff)

**PLAINTIFF'S DECLARATIONS**

1. I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct. _And are based upon personal Knowledge_

2. I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this _20th_ day of _November_, 20 _23_.
(Day)              (month)              (year)

_Allen "F" Calton_

_Allen "F" Calton_
(Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions. The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Section 1983 Complaint page 32 of 32   Rev. 05/15

Exhibit " A"

Below Two Pages

Allen "F" Calton  v  Bobby Lump Kin, etal

District Clerk Thomas Wilder and Judge Chris Wolfe 10-25-23

Re: Federal Habeas Corpus Proceeding Filed In State Court under
State Court Concurrent Jurisdiction with Federal Courts On
Resolving Federal Law Claims

I have on no less than two occassions filed a Federal Habeas
Corpus Proceeding in the State Court with District Clerk Thomas
Wilder. First by First Class mail on 8-29-23. Then again by personal
delivery by a courier on 10-23-23. Check your files. I'm not to sure
a new habeas proceeding under Federal Law has been initiated.
That's my intent. Due to the fact on 8-29-23 the papers were not
assigned any file number on my face pages returned to me.
Which begs the question. What file are those papers a part of?
Not to mention there has been no response by respondent
or order issued by a Judge in nearly two months. By now
the District Attorney or Attorney General or Judge should have
responded by now if that case had been filed. Okay then
on 10-23-23 out of an abundance of Caution my papers were
personally presented to the Clerk's office. They were filed. But
merely filed under my trial cause number 0843168. That
doesn't seem right with D-213 in front. As though the papers
were filed in the trial court case file that's long ago been
Closed. I'm initiating a new Federal Habeas Corpus Proceeding in
the State Court under its concurrent jurisdiction with Federal
Courts to resolve Federal Law claims. See Robb v Connolly
111 U.S. 624, 637 (1884) (Upon the State Courts, equally with the
Courts of the Union, rests the obligation to guard, enforce

Letter To Clerk and Judge Wolfe page 1 of 2

Exhibit "A" page 1 of 2

and protect every right granted or secured by the Constitution of the United States"). Has this been done or not? And most importantly this is by no way meant to be construed as a state habeas corpus proceeding under any state statute or constitutional law. This I repeat is a Federal Habeas Corpus Proceeding Filed In The State Court under Federal Law For which state Courts have concurrent Jurisdiction to resolve Federal Law issues.

Please For Once and For All make sure this federal Habeas procedure Has Been initiated and inform me what court its in. So I can contact that Judge about moving the case forward. Clarification on the matter with a response from the clerk and the Judge would be appreciated to me at the address below.

Thank You,

Allen "F" Calton

Allen "F" Calton #1123880
Connally Unit
899 FM 632
Kenedy, Tx. 78119
Letter To Clerk and Judge wolfe page 2of2
    Exhibit "A" page 2of2

Exhibit "B"

Below Two Pages

Allen "F" Calton v Bobby Lumpkin, etal

District Clerk Thomas Wilder and Judge Chris Wolfe 11-10-23

Re: Federal Habeas Corpus Proceeding Filed In State Court under State Court Concurrent Jurisdiction with Federal Courts On Resolving Federal Law Claims

I have on no less than two occasions filed a Federal Habeas Corpus proceeding in the State Court with District Clerk Thomas Wilder. First by First Class mail on 8-29-23. Then again by personal delivery by a Courier on 10-23-23. Check your files. I'm not to sure a new habeas proceeding under Federal Law has been initiated. That's my intent. Due to the fact on 8-29-23 the papers were not assigned any file number on my face pages returned to me. Which begs the question. What file are those papers a part of? Not to mention there has been no response by respondent or order issued by a judge in nearly two months. By now the District Attorney or Attorney General or Judges should have responded by now if that case had been filed. Okay then on 10-23-23 out of an abundance of caution my papers were personally presented to the clerks office. They were filed. But merely filed under my trial cause number 0843168. That doesn't seem right with D-213 in front. As though the papers were filed in the trial court case file thats long ago been closed. I'm initiating a new federal Habeas corpus Proceeding in the state court under its concurrent Jurisdiction with Federal Courts to resolve Federal Law Claims. See Robb v Connolly 111 U.S. 624, 637 (1884) (upon the state courts, equally with the courts of the union, rests the obligation to guard, enforce

Letter to clerk and Judge wolfe page 1 of 2

Exhibit "B" page 1 of 2

and protect every right granted or secured by the Constitution of the United States") Has this been done or not? And most importantly this is by no way meant to be construed as a state habeas corpus proceeding under any state statute or constitutional law. This I repeat Is a Federal Habeas Corpus Proceeding Filed In The State Court under Federal Law For which State Courts have concurrent Jurisdiction to resolve Federal Law issues Please for once and for All make clear whether or not this Federal Habeas Proceeding Has been initiated and inform me what court its in so I can contact the Judge about moving the case forward. Clarification on the matter with a response from the clerk and the Judge would be appreciated to me at my new prison address below. I especially need the cause number of this new proceeding.

Thank You,
Allen "F" Calton

P.S. Judge Wolfe I sent you a copy of these documents to file. If you refuse to file then please send my papers back to me sir.

Allen "F" Calton # 1123880
Powledge Unit
1400 FM 3452
Palestine TX. 75803
Letter To Clerk and Judge Wolfe page 2 of 2
Exhibit "B" page 2 of 2

Exhibit " C "

Below Forty Nine (49) pages

Face Page

FILED
TARRANT COUNTY
8/29/2023 3:07 pm
THOMAS A. WILDER
DISTRICT CLERK

Cause No. _____

Allen "F" Calton
            Petitioner

        V

Bobby Lumpkin
Director T.D.C.J.
Warden Edmundo Cuetto
Connally Unit Warden
            Respondents

In The Judicial District Court

_____ Judicial

Tarrant County, Texas

Federal Petition For Writ Of Habeas Corpus Under Federal Law
Filed In State Court Under Concurrent Jurisdiction It Has With
Federal Courts To Secure Rights Under The Laws Of The United States

Allen "F" Calton #1123880
Connally Unit
899 FM 632
Keredy, Texas 78119
Prose Petitioner

Exhibit "C"

# Table Of Contents

Pages

Table of Contents . . . . . p. i

Table of Authorities . . . . p. iv

Federal Petition For A Writ Of Habeas Corpus . p. 1

Statement Of Jurisdiction . . . p. 1

Statement Of Facts . . . . . p. 1

(A) Facts Establishing The Materiality Of The 'Butcher Knife' To Defense. p. 1

(B) Facts Establishing Due Diligence Was Exhibited To Discover Claim p. 4

(C) Grounds For Habeas Corpus Relief . . . p. 6

Ground # 1

The State Failed To Disclose "Brady" Evidence That Was In Possession Of Investigative Agencies To Which The State Had Access That Would Have Proved Actual Innocence In Violation Of Kyles v Whitley 514 U.S. 419 (1995) . . . p. 6

Ground # 2

The State Intentionally Suppressed and/or Failed To Disclose Favorable Evidence That Would Have Proved Actual Innocence In Violation Of Brady v Maryland . . . p. 8

Ground # 3

Petitioner Was Tried By A Bias Judge In violation Of Arizona v Fulminante 499 U.S. 279 (1991) and the Fourteenth Amdt. p. 11

(D) Additional Facts On Habeas and Facts Established At Trial. p. 14

Federal Petition For Habeas Corpus Filed In state Court p. i

# Table of Contents

pages

(E) The Probable Impact Of The 'Butcher Knife' with The Exposure of The False '3 shot Theory' and Sans The 'made up motive' Upon The Per Suasiveness of The States Case As A whole Now In That Light
∘ - p. 20

(F) Since The Judiciary Act Of 1789 State Courts Have Had Original Jurisdiction To Adjudicate Claims Arising under Federal Law
∘ - p. 25

(G) No State Law Can Prohibit Nor Can A State Court Refuse Its Duty To Exercise Jurisdiction over Federal Law Claims Filed Therewith ∘ p. 27

(H) State Courts when Exercising Jurisdiction on Federal Claims must Apply Federal Constitution, Statutory And Federal Common Law Thereto ∘ ∘ p. 28

(I) The 'Butcher Knife' As Newly Discovered Evidence which The Instrumentality of Calton's Self-Defense Theory At Trial That Establishes Calton's Innocence Is Rare and Exceptional ∘ p. 28

(J) Calton's Prima Facie Showing Of Actual Innocence under 'Schlup' Made In The State Court Habeas Proceeding Is Accorded Deference And The Presumption of Correctness under Federal Law ∘ - p. 32

(K) Before Calton's Prima Facie Showing Of Actual Innocence Can Be Set Aside This Court Must Hold A Constitutionally Comporting Evidentiary Hearing. ∘ ∘ ∘ ∘ - p. 34

(i) ∘ ∘ ∘ ∘ - p. 34

(ii) Butcher Knife As Newly Discovered Evidence mandates Evidentiary Hearing ∘ - p. 35

Federal Petition For Habeas Corpus Filed In State Court p. ii

Table of Contents

pages

(L) Suppression of Evidence By Police Favorable To Defense ○ p. 35

(m) Suppression of Evidence By Prosecutor Favorable To Defense - p. 36

(N) Suppression of Evidence By Judge Favorable To Defense - p. 36

(O) The materiality of The 'ButchesKnife' To Calton's Defense, The Prejudice Sustained In Its Absence That Rendered Self Defense Theory Inviable · p.37

Prayer - Relief Requested                                  - p. 40

Verification - Certification                              ○ p. 40

Federal Petition For Habeas Corpus Filed In State Court p. iii

Table Of Authorities

Cases                                                                    Pages

Arizona V Fulminante 499 u.s. 279 (1991) .      .    .   p. 37, 38, 39

Bailey V State 46 sw3d 489 (Tex. App. Corpus Christi 2001) . p. 37

Banks V Dretke 540 u.s. 668 (2004)  .      .      .   p. 36

U.S. v Barnham 595 F2d 231 (5 th cir 1979)      .      - p. 23

Blain v State 647 SW2d 293 (Tex Crim App 1983)   .  p. 37

Bousley V U.S. 523 u.s. 614 (1997)  .       .      .. p. 29

Bracey v Gramley 520 u.s. 899 (1997) .       -       -p. 36

Ex Parte Brooks 219 sw3d 396 (Tex Crim App 2006)  . p. 32

Casenada v State 23 sw3d 216 (Tex App. El Paso 2000) - p. 25

Ceasar V State 939 sw2d 778 (Tex App. Houston [1st Dist] 1997). p 24

Charles Dowd Box Co. v Courtney 368 U.S. 504 (1962)  . p. 26

Coleman v Thompson 501 us. 722 (1991) .  -   .     .  P. 29

Crane v State 786 sw2d 338 (Tex. Crim App 1990)  . 23

Edwards v Balisok 520 u.s. 641 (1997)   .    . 36

Estelle v mc Guire 502 U.S. 62 (1991)   .        . p. 33

Fairman V Anderson 188 F3d 635 (5th cir 199)  . p. 29, 31, 39

Finley v Johnson 243 F3d 215 (5th cir 2001)  . p. 29, 30

Flemming V State 949 sw2d 896 (Tex App Houston [14th Dist] 1997). p. 23

Federal Petition For Habeas Corpus filed In State Court p. IV

Table of Authorities

Cases                                                    pages

Geisburg v State  984 SW2d 245 (Tex Crim App. 1998)  .  . p.30

Golsblum v Klen  510 F3d 204 (3d Cir 2007)  .  . p.34

Harris v State  727 SW2d 537 (Tex Crim App. 1989)  . . p.24

Harris v Reed  858 F2d 16 (1st Cir 1988)  .  .  . p.39

Hicks v State  837 SW2d 686 (Tex. App. Houston [1st Dist] 1992). p.38

House v Bell  126 SCt 2064 (2006)  .  .  . p.23

Howlett v Rose  496 U.S. 356 (1990)  .  . . p.27, 28

INS v St. Cyr  533 U.S. 289 (2001)  .  . . p.27

U.S. v Jackson  780 F2d 1305 (7th Cir 1986)  . . p. 40

Johnson v State  919 SW2d 473 (Tex App Fort Worth, pet ref'd). p.38

U.S. v Jordan  49 F3d 152 (5th Cir 1995)  .  . p. 22

Keeney v Tamayo Reyes  504 U.S. 1 (1992)  .  . p.35

Kirkpatrick v Whitley  992 F2d 491 (5th Cir 1993)  . . p.31

Kyles v Whitley  115 S Ct 1555 (1995)  .  . p. 21, 36

Murdoch v City of Memphis  20 Wall 590 (1875)  . . p.33

Ransome v Johnson  126 F3d 716 (5th Cir 1999)  . . p.31

Reed v Stephens  739 F3d 753 (5th Cir 2008)  . p. 34

Revell v State  885 SW2d 206 (Tex. App. Dallas 1992) . p.37, 38

Robertson v State  137 SW3d 809 (Tex App Waco 2004). p.38

Federal Petition For Habeas Corpus Filed In State Court p. V

Table of Authorities

Cases                                                              Pages

Robertson v State 163 Sw3d 730 (Tex Crim App. 2005) · p.38

Rocha v Thaler 619 F3d 387 (5th cir 2010)    ·    · p.30

Sawyer v Whitley 945 F2d 812 (5th cir 1991)    ·    · p.31, 32

Sawyer v Whitley 112 S Ct 2514 (1992)    ·    · p.29, 31, 32

Schlup v Delo 513 U.S. 298 (1995) ·    · p.25, 28, 29, 31, 32

Sharp v Bell 593 F3d 372 (4th Cir 2010)    ·    · p.34

Stewart v Wolfenberger 468 F3d 338 (6th cir 2006) · p.39

Strickler v Green 527 U.S. 263 (1999)    ·    · p.35, 36

Sumner v Mata 449 U.S. 539 (1981)    ·    · p.34

Tafflin v Levitt 493 U.S. 455 (1990) ·    · p.26

Testa v Katt 330 U.S. 386 (1941)    ·    · p.27

The Moses Taylor 71 U.S. 411 (1867)    ·    · p.26

Thomas v Allen 837 Sw2d 631 (1992)    ·    · p.27

Thomas v State 821 Sw2d 616 (Tex Crim App. 1991) · p.37

Ex Parte Torress 943 Sw2d 469 (Tex Crim App. 1997) · p.32

Townsend v Sain 372 U.S. 293 (1963) overruled
In part by Keeney v Tamayo-Reyes 504 U.S. 1 (1992) · p.35

Tucker v State 274 Sw3d 686 (Tex Crim. App. 2007) · p.38

Federal Petition For Habeas Corpus Filed In State Court p.VI

Table Of Authorities

Cases                                              Pages

Talamante v Romero 620 F.2d 784 (10th Cir 1980)  .    p. 40

Tumey v Ohio 273 U.S. 510 (1927)         o      =   → p.37

Valdez v Cockrell 274 F.33 941 ( 5th Cir 2001)  .  _ p.34

Van Brackle v State 179 Sw3d 708 (Tex App Awstn 2005). p.24, 25

Vasquez v State 2 sw3d 355 (Tex. App. San Antonio 1999)  o  o p.39, 40

In re Vial 115 F.33 1192 (4th Cir 1997)      o      =   . p.40

Ward v Cain 53 F.33 106 (5th Cir 1995)
                                            o      = p.29, 31

Weary v Cain 136 SCt 1002 (2016)       o    = p.40

Williams v Thaler 602 F.33 291 (5th Cir 2010)  . p. 33

Withdraw v Larkin 421 U.S 35 (1975)   o    o  p. 36

Yellow Freight Sys v Donnelly 494 U.S. 820 (1980). p 26

Youngblood v West Virginia 547 U.S 867 (2006)  o p. 36

U.S. Constitution Amendments, Codes, Rules and Statutes

U.S. Const  Art I  § 9 Cl.2  .      o      o     o p. 1

U.S. Const  Art 6 's Cl.2     o        =       =    = p 28

U.S. Const. Amendment XIV          o       o     o p.35, 36

28 U.S.C. § 2241  o      =      o      o   = p. 1, 27

28 U.S.C.-S 2244  o      o      o      o   → p. 27

Federal Petition For Habeas Corpus Filed In State Court p. vii

Table of Authorities

Cases

pages

Texas Constitution, Amendments, Codes, Rules and statutes

Tex. Const. Art. 5, § § 8 . . . . p. 1

Tex. Code Crim Proc. Art. 11.05. . . . . p. 1

Tex. Code Crim Proc Art. 11.07 . . . p. 32, 33

Tex. Penal Code Section 9.22 . . . p 29, 30

Tex. Penal Code Section 9.31 . . . p. 29, 30, 31

Tex. Penal Code Section 9.32 . . . p. 29, 30, 31

Secondary Authority

Vicki C. Jackson Symposiums Printz and Testa The Infrastructure of Federal Supremacy 32 Ind L Rev. 111 (1998) . . . . . p. 27

Federal Petition For Habeas Corpus Filed In State Court p. Viii

## Federal Petition For A Writ Of Habeas Corpus

Petitioner Allen "F" Calton [Hereafter Calton] respectfully requests the 213th Judicial District Judge to exercise his or her Jurisdiction on this Federal Petition For Writ of Habeas Corpus filed in the state court.

## Statement Of Jurisdiction

A criminal district Court in Tarrant County, Texas can exercise its original Habeas Corpus afforded under Tex. Const. Art. 5 § 8 and T.C.C.P over this Federal Habeas Proceeding filed in the State court invoking Federal Question Jurisdiction on habeas afforded Art. I § 9 Cl.2 and 28 U.S.C. § 2241 and 28 U.S.C § 1331

## Statement Of Facts

### (A) Facts Establishing The materiality Of The 'Butcher Knife' To Defense

(1) On 4-24-02 officer Raley Of The City of Garland Police Department [Hereafter Garland P.D.] seized a 'Butcher Knife found in the vehicle Calton fired the shot from in self-defense. That struck the victim after the victim cut Calton with the 'Butcher Knife' while Calton sat in his parked vehicle. See Petitioner's Affidavit Appendix In Support Of Habeas Corpus [Hereafter referred to as "app"] at Ex "A" app. p.1

(2) The 'Butcher Knife' seized by police belonged to the victim Everette Charles Angle AKA "Chuck" [Hereafter victim] who was brandishing it in a threatening manner towards Calton. While leaning inside the driver's side window of Calton's parked vehicle while Calton sat in the driver's side seat. See Ex "B" app. p. 3 ; Ex "C" (Calton's Affidavit) app. p. 5

Ln. 6-7 ; Ex "D" TSF V8 p. 163-164 app. p. 10

(3) The 'Butcher Knife' was the instrumentality of Calton's self-defense theory Jury was charged on at trial. See Ex "C" app. p. 5 Ln. 5-7 ; Ex "G" TSF V8 p. 223-224 app. p. 14

(4) Due to the victim while appearing to Calton to be arguing over money. Was brandishing a sharp object toward Calton in a threating maner. While leaning and reaching through the driver's side front window of Calton's parked vehicle while Calton sat in the driver's side front seat. See Ex "B" app. p. 3 ; Ex "C" app. p. 5 Ln. 5-7 ; Ex "D" TSF V8 p. 163-164 app. p. 10

(5) In response to this apparent attack Calton grabbed the blade of the 'Butcher Knife' and was cut by the victim in the process. See Ex "B" app. p. 3 ; Ex "C" app. p. 5 Ln. 5-7.

(6) In response to being cut by the victim with the 'Butcher Knife' Calton shot the victim one time in self-defense. In an obvious attempt to neutralize the situation and prevent further attack. See Ex "C" app. p. 5 Ln. 5-7 ; Ex "F" TSF V8 p. 181-182 app. p. 16 ; Ex "G" TSF V6 p. 72 app. p. 17

(7) The materiality of the 'Butcher Knife' seized by police is established due to it would have corroborated Calton's self-serving testimony at trial where Calton testified: "The victim was trying to cut me with a knife that I grabbed the blade of and was cut by that was recovered by police. See Ex "F" TSF V8 p. 181-182 app. p. 16

(8) The materiality of the 'Butcher Knife' seized by police is further established due to to the fact that it would have also corroborated Calton's self-serving statement to police where Calton

Federal Petition For Habeas Corpus Filed In State Court p. 2 of 40

stated: "The victim was reaching inside of Calton's vehicle with a sharp object that Calton grabbed and was cut with on his right hand. Sustaining impairing injuries to his right that prevented Calton from writing. See Ex "B" opp. p. 2-3

(9) The jury was charged on self-defense but the defense could not be established nor invested with viability sans the 'Butcher Knife' admitted into evidence. See Ex "E" TSF V8 p 223.224 opp. p. 14

(10) Especially in light of the state's cross-examination of Calton. and its closing argument in part both referring to the matter and implying that if a 'Butcher Knife' existed and played a role in the offense. Calton would have issued a subpoena for the 'Butcher Knife' and presented it at trial. As the state noted at these times that Calton's subpoena power as a prose Defendant was on par with the state's subpoena power. See Ex "E" TSF V8 p 215. 216 opp. p. 12; Ex "H" TSF V9 p. 9-10 opp. p. 19

(11) The materiality of the 'Butcher Knife' is also established by the fact that had it been admitted into evidence would have allowed the jury to ascertain for themselves the deadly nature of the 'Butcher Knife'. Had the jury been able to examine the 'Butcher Knife' for themselves at trial would have allowed the jury to reasonably conclude that the victim did in fact the capability of causing serious bodily injury or death to Calton while brandishing an instrument such as a 'Butcher Knife'. See Ex "B" opp. p 3; Ex "F" TSF V8 p. 181-182 opp. p. 16

(12) The materiality of the 'Butcher Knife' is also established by the fact that had it been admitted into evidence would have allowed Calton the opportunity to establish the Butcher Knife's deadly nature via an experts testimony at trial. See

Federal Petition For Habeas Corpus Filed In State Court p. 3 of 40

See Ex "B" app. p. 3 ", Ex "F" TSF V8 p. 181-182 app. p. 16

(13) Due to the jury was foreclosed from having the opportunity to personally examine the 'Butcher Knife' for themselves or have an expert to establish its deadly nature to them. Precluded their opportunity to reasonably determine that the victims use or Intented use of the 'Butcher Knife' at the time in question was capable of causing death or serious bodily injury to Calton. That in turn precluded the jury from reasonably determining that Calton was justified in his use of deadly force in response to the victims use or attempted use of deadly force. See Ex "B" app. p. 3; Ex " F" TSF V8 p. 181-182 app. p. 16

(B) Facts Establishing Due Diligence Was Exhibited to Discover Claim

(14) Calton made several open records requests prior to trial through his court appointed investigators to no avail to obtain "The Police Report" from the Garland P.D. that unbeknownst to Calton memorialized Police had seized a 'Butcher Knife' See Ex "I" PSF 1-16-04 V. 1 of 1 p. 21-22 app. p. 21 ; Ex "C" app. p. 4 Ln. 3

(15) Calton filed two different Brady motions in an attempt to discover favorable evidence in the possession of the state or State's agent that was unknown to the defense. These motions were granted by the state trial court on 7-2-03 and 1-8-04 respectively. See Ex "J" app. p. 24-26", Ex "K" app. p. 27-29

(16) Calton tried to have a subpoena issued pretrial compelling his arrest records in the possession of the Garland P.D. to be turned over directly to the defense. Containing "The Police Report" unbeknownst to Calton memorialized Police had seized a 'Butcher

Federal Petition For Habeas Corpus Filed In State Court p. 4 of 40

Knife. Judge Gill denied this subpoena request see Ex "L"
PSF 1-8-04 p.12 app. p. 30.

(17) Calton tried to obtain 'The Police Report' under the authority of
TCCP Art 39.14 that unbeknownst to calton memorialized police had
seized a 'Butcher Knife'. Judge Gill granted the discovery request pursuant
to Tex. Rules of Evidence Rule 615. Thus the records would not be
made available until a witness on the witness stand relevant to the
'The Police Report' was to be cross-examined by the defense. See
Ex "I" PSF 1-16-04 V. 1 of 1 p.23 app. p. 23

(18) On 4-26-04 Judge Gill relented his subpoena request denial
to Calton to the extent that a subpoena would issue for the records
pertaining to Caltons arrest containing 'The Police Report' that unbeknownst
to calton memorialized police had seized a 'Butcher Knife'. For the re-
cords to be provided to Judge Gill for his in camera review. For
his review of said records contained anything relevant to the
defense. See Ex "M" PSF 4-26-04 V. 1 of 1 p.7 app. p. 32

(19) Calton made several open records request post-trial begin-
ning in the fall of 2004 to no avail to discover the 'Butcher Knife'
See Ex "C" app. p.5 Ln.4 ; Ex "N" thru "Q" app. p. 33-36.

(20) Calton never received any response to his requests. See Ex "C"
app. p.5 Ln.4. In all probability due to governmental bodies in Texas
are not required to respond or comply with requests from an in-
mate or their agent, other than the inmates attorney. See Ex "R"
app. p.37. Since Calton proceeded prose at trial he had no attorney

(21) After exhibiting 'due diligence' as described above to no
avail. Calton used 'maximum feasible' to discover
the claim by filing a frivolous motion under Tex. Code Crim
Proc. Art. 64.01 as a fishing expedition to circumvent Tex Gov't

Federal Petition For Habeas Corpus Filed In State Court p.5 of 40

Code §552.028 that foreclosed Calton from viably utilizing the "open Records provision" due to his incarceration status in Texas. See Ex "C" app. p.9 Ln.18

(22) Calton upon receipt of the state's response to his frivolous TCCP. Art. 64.01 motion on 3-29-17 became aware that police possessed the 'Butcher Knife' at the time of his trial. Although it had been alleged otherwise to Calton. See Ex "P" app. p.9 Ln.18, Ex "S" app. p. 38-58. In Particular. See Shelli Pryor's Affidavit Id. at app. p. 42-43.

(23) Although Ms. Pryor's affidavit indicates all property seized by police related to Calton's arrest on 4-23-02 was released to Lt. Van Cleave on 2-17-05 out of the police evidence room for civil court. Which was over nine months after Calton's trial. See Ex "S" app. p.42-43. Take Judicial notice that the only evidence seized by Garland P.D. in reference to Calton arrest on 4-23-02 was the 'Butcher Knife' in question. Id at app. p. 42-43; Ex "A" app. p.1; Ex "T" app. p. 63 and 103

(C)        Grounds For Habeas Corpus Relief

    Calton incorporates the above paragraphs as well as the additional facts alleged in sections "D." and "E" below by reference and adopt the same as if fully set forth here for all intents and purposes for habeas relief sought herein. For Grounds One, Two and Three below.

Ground #1

Federal Petition For Habeas Corpus Filed In state Court p. 6 of 40

The State Failed To Disclose "Brady" Evidence That Was In Possession Of Investigative Agencies To Which The State Had Access That Would Have Proved Actual Innocence In Violation Of Kyles V. Whitley 514 U.S. 419 (1995)

Concealed from Calton by officer Michael G. Clark # 2769 [Hereafter referred to as Clark] until 3-29-17 was that the 'Butcher Knife' the instrumentality of Calton's self-defense theory at trial was available for trial. See Ex "S" app. p. 42-43. Not only was the 'Butcher Knife' available for trial. It's undisputed officer Clark checked the 'Butcher Knife' out of the Garland P.D. Evidence room on 5-17-04 for Calton's trial. See Ex "U" app. p. 118. Officer Clark did so in response to a defense subpoena. See Ex "V" app. p. 119-121. Officer Clark arrived in court on 5-17-04 and lied to the defense by falsely alleging: "There was no 'Butcher Knife' in police's possession at the time of trial and there was no indication that it had been logged into the evidence room. See Ex "C" app. p. 9 Ln. 17. This lie told to the defense by officer Clark was corroborated at trial by the testimony of officer Lucas Shupe. See Ex "W" TSF V4 p. 49 app. p. 122; Ex "X" TSF V4 p. 59-60 app. p. 123. Both officer Clark and officer Shupe lied about the availability of the 'Butcher Knife' for the defense to be utilized at trial as the instrumentality of Calton's self-defense theory at trial. Due to their was animus between Calton and both Clark and Shupe. Due to Calton had sued both officers in Dallas Federal Court in Civil Action No. 3:02-CV-02215-N. That was pending during trial. Take Judicial notice of the same. Also See Ex "X" TSF V4 p. 62-63 app. p. 124. On 5-17-04 after checking the 'Butcher Knife' out of the police evidence room for court. Officer Clark situated the 'Butcher Knife' at some secret remote place from 5-17-04 thru 10-26-04

Federal Petition for Habeas Corpus Filed In State Court p. 7 of 40

The time period the 'Butcher Knife' was removed from the police evidence room. Officer Clark hid the 'Butcher Knife' for an over five month time period as a ruse to make it appear to police evidence room personel that the 'Butcher Knife' had indeed been utilized in court for that over five month time period. Due to officer Clark alleged to police evidence room personel on 5-17-04 that he needed to check the 'Butcher Knife' out of the evidence room 'out For Court' and then alleged on 10-26-04 to evidence room personel that he was checking the 'Butcher Knife' back into the evidence room "In From Court". See Ex "U" app. p. 118 officer's Clark's suppression of the 'Butcher Knife' by **lying** to the defense by stating: " Police did not possess the 'Butcher Knife' at the time of trial" and situating the 'Butcher Knife' in some secret rende for over five months. Precluded the Jury from reasonably finding Calton acted in self-defense and Contributed to Calton's conviction

## Ground #2

The state Intentionally Suppressed and/or Failed To Disclose Favorable Evidence That would Have Proved Actual Innocence In Violation Of Brady v Maryland 373 u.s. 83 (1963)

Conceded from Calton by prosecutors until 3-29-17 was that the 'Butcher Knife' the instrumentality of Calton self-defense theory at trial was available for trial. See Ex "S" app. p. 42-43 Not only was the 'Butcher Knife' available for trial. Its undisputed that officer Clark #2769 checked the 'Butcher Knife' out of the Garland P.D. evidence room on 5-17-04 for Calton's trial. See Ex "U" app. p. 118 officer Clark while sitting outside the courtroom was approached by Prosecutor David Haterman

Federal Petition For Habeas Corpus Filed In state Court p. 8 of 40

On 5-17-04 along with other defense witnesses. See Ex "Y"
TSFV7 p.22-26 app.p. 125-126. After speaking to officer Clark away
from other defense witnesses Mr. Haterman was able to con-
vince officer Clark to lie to the defense. Because Mr. Haterman
Knew that Calton had sued officer Clark in Federal Court.
See Ex "X" TSFV4 p.62-63 app.p. 124. And that was why
officer Clark was more than willing to falsely allege to the defense
that: "There was no 'Butcher Knife' in police's possession at the
time of trial and there was no indication that it had been
logged into the evidence room". See Ex "C" app.p 9 Ln.17. This
lie told to the defense by officer Clark was corroborated at trial
by the testimony of Officer Lucas Shupe. See Ex "W" TSFV4 p.49
app.p.122'; Ex "X" TJF V4 p.59-60 app.p 123. Both officer Clark
and officer Shupe lied about the availability of the 'Butcher Knife"
for the defense to be utilized at trial as the instrumentality of
Calton's self-defense to be utilized at trial as the instrumenta-
lity of Calton's self-defense theory at trial. Due to their was ani-
mus between Calton and both Clark and Shupe. Due to Calton had
sued both officers in Dallas Federal Court in Civil Action No.
3:02-cv-02215-N. That was pending during trial. Take judicial notice
of the same. Also see Ex "X" TSFV4 p.62-63 app.p.124. On 5-17-04 Mr. Haterman
told officer Clark to leave the 'Butcher Knife' with him and that he would
call officer Clark at a later date to retrieve it. As a ruse to make it
appear to police evidence room personnel that the 'Butcher Knife' had
indeed been utilized for a court proceeding for the five months
it was removed from the police evidence room from 5-17-04 thru
10-26-04. That he needed to check the 'Butcher Knife' out for court
On 5-17-04. And alleged on 10-26-04 that he was checking the 'Butcher Knife'

Federal Petition For Habeas Corpus Filed In State court p. 9 of 40

back into the police evidence room on 10-26-04 ' In From Court' See "Ex"."4" app. p.118. On 4-26-04 during an off the record discussion about whether or not a 'knife' was in the Garland P.D. evidence room Judge Gill ordered Mr. Hakeman by stating: "If there is a 'Knife' in the possession of police. Get it to the defense or make it known to the defense. Because the same is Brady material. See Ex"M" PSF 4-26-04 V.1of1 p.7 app. p. 32'; Ex"C" app. p.8 Ln.14. In response to Judge Gill's order and statement State's Attorney Hakeman states: "Judge according to my investigator there was no 'Knife' seized by police or currently in possession of police in rela-tion this offense. Detective Hardy in the Course of his investiga-tion did not collect a 'knife'. So there is not a knife in the evidence room in the Fort Worth P.D. or Garland P.D. I'll double check Judge and if a knife' is located I'll produce it to the defense. Id at app. p. 8 Ln.15. Mr. Hakeman's statement occured after I explained to Mr. Hakeman how the 'Butcher Knife' was relevant to the defense i.e. I was cut with after the victim brandished the 'Butcher Knife' toward Calton in a threatening. Id at app. p.5 Ln.6-7. At no time before or during trial did the states attorney produce the 'Butcher Knife' or provide information to the defense to afford the defense to procur the 'Butcher Knife'. Id at app. p. 8 Ln. 16. The Prosecutor's suppression of the 'Butcher Knife' by telling officer Clark to lie to the defense and state: "Police did not have possession of the 'Butcher Knife' at the time of trial" and the Prosecutors' con-cealment of the fact he commandeered the 'Butcher Knife' from officer clark on 5-17-04 and that Mr. Hakeman kept it in his posses-sion unbeknownst to the defense for over five months. Precluded the jury from reasonably finding Calton acted in self-defense and contributed to Calton's conviction.

Federal Petition For Habeas Corpus Filed In State Court p.10 of 40

<u>Ground # 3</u>

Petitioner was Tried By A Bias Judge In Violation Of Arizona
V Fulminante 499 US. 279 (1991) And The Fourteenth Amendment

Concealed from Calton by Judge Gill until 3-29-17 was that
the 'Butcher Knife' the instrumentality of Calton's self-defense theory at
trial was available for trial. See Ex "S" app. p. 42-43. Not
only was the 'Butcher Knife' available. Its undisputed that officer
Clark # 2769 checked the 'Butcher Knife' out of the Garland P.D evi-
dence on 5-17-04 for Calton trial. See Ex "U" app. p.118. Officer
Clark arrived in court on 5-17-04 and produced the 'Butcher
Knife' to Judge Gill as subpoena compelled to do so. See Ex.
"V" app. p. 119-121. Judge Gill then told officer Clark to lie
to the defense by falsely alleging: "There was no 'Butcher
Knife' in police's possession. And there was no indication that
it had been logged into the evidence room". See Ex "C" app.
p.9 Ln. 17. This lie told to the defense by officer Clark was cor-
roborated at trial by the testimony of officer Lucas shupe. See Ex
"W" TSF V4 p. 49 app. p. 122', Ex "X" TSF V4 p 59-60 app. p 123
Both officer Clark and officer shupe lied about the availability
of the 'Butcher Knife' for the defense to be used as the in-
strumentality of Calton's self-defense theory at trial. It was
common knowledge to everyone associate with Calton's
trial at the time including Judge Gill that Calton had
sued the arresting officers Clark and Shupe among others.
Thus Judge Gill convinced the officers to lie in light of the ani-
mus between them and Calton. Due to Calton had sued both
officers in Dallas Federal Court in civil Action NO. 3:02-CV-02215-N

Federal Petition For Habeas Corpus Filed In State Court p. 11 of 40

That was still pending at the time of the criminal trial. Take judicial notice of the same. Also see Ex"X" TSFVY p.62-63 app. p.124. On 5-17-04 Judge Gill told Officer Clark to leave the "Butcher Knife" with him and that he would call officer Clark back at a later to retrieve it. As a ruse to make it appear to police evidence room personel that the five months it was been utilized for a court proceeding for the five months it was removed from the police evidence room from 5-17-04 thru 10-26-04. Due to officer Clark had alleged to police evidence room personel on 5-17-04 that he needed to check the 'Butcher Knife' 'out for court' and officer Clark alleged on 10-26-04 that he was checking the "Butcher Knife" back to the evidence room 'In From Court' See Ex"U" app. p.118 On 4-26-04 during a pretrial hearing Calton made an inquiry to Judge Gill concerning the 'Butcher Knife' stating: "And also there seems to be a problem with a knife. It is ultimately evidence I haven't been able to find out if there was a knife in Garland or not, and I need to know within two weeks because I am going to need to prepare if there is or there is not a knife--" See Ex"M" PSF 4-26-04 v.1 of 1 p.6-7 app. p.31-32. While I was inquiring about the 'Butcher Knife' Judge Gill interposed for obvious reasons i.e. his intent to suppress the 'Butcher Knife'. As confirmed by Judge Gill's suggestion interposed that the discussion about the 'Butcher Knife' be off the record. See Id at p.7 app. p.32 ; Ex"C" app. p.5 Ln. 5. During the off the record discussion Calton explained to prosecutor Haterman in the presence of and within earshot of Judge Gill who was also involved in the off the record discussion between the prosecutor and Calton. Calton explained to the prosecutor and Judge the relevancy of the 'Butcher Knife' to the defense i.e. the victim was brandishing a sharp object toward Calton in a threatening manner while arguing over money and subsequently cut Calton. And in re-

Federal Petition For Habeas Corpus Filed In state court p.120f40

sponse to the victim cutting Calton. Calton shot him one time in self-defense to neutralize the attack. At the conclusion of the off the record discussion. Calton sought to have a subpoena issued to obtain police records that memorialized his arrest and unbeknownst to Calton contained two police reports confirming police had seized a 'Butcher Knife'. Judge Gill the sub-poena request to the extent that the police records would be provided to Judge Gill so he could conduct an in camera review so that he could determine if anything contained therein would be relevant to Calton's defense. See Ex "M" p. 7 app. p. 32

A week before trial Judge Gill conducted his in camera review of the police records that contained multiple police reports confirming police had seized a 'Butcher Knife'. See Ex "Z" TSF V5 p. 37-38 app. p. 128 ", Ex "T" app. p. 59-116. In particular see app. p. 63 and 103. Although Judge Gill knew police had seized a 'Butcher Knife' and knew the same was unbeknownst to Calton. As Calton had a week before the in camera review had the off the record discussion concerning the 'Butcher Knife' and Calton explaining his lack of knowledge on whether police had seized a 'Butcher Knife' Judge Gill at no time before or during trial put Calton on notice that police had seized a 'Butcher Knife' See Ex "C" app. p. 8&9. In light of the fact that it is undisputed officer Clark took care, custody and control of the 'Butcher Knife' from the police evidence room 'out for court' on 5-17-04 the second monday of Calton's two week trial. See Ex "M" app. p. 32. In response to a defense subpoena see Ex "V" app. p. 117-121. The subpoena makes clear officer Clark's duty as described in said subpoena specifically officer Clark was to: "Bring with him and produce in court the 'Butcher Knife' Testify on behalf of the defense. And was to remain from day to

Federal Petition For Habeas Corpus Filed In State Court p. 13 of 40

day and from term to term until discharged by said court". See Id at app p. 121. Judge Gill is the Court, Judge Gill's suppression of the 'Butcher Knife' by telling officer Clark to lie to the defense and state & "Police did not have possession of the 'Butcher Knife' at the time of trial" and Judge Gill's concealment of the fact that officer Clark produced the 'Butcher Knife' to him on on 5-17-04 and Judge Gill kept it in his possession unbeknownst to the defense for over five months, precluded the jury from reasonably finding Calton acted in self-defense and contributed to Calton's conviction.

(D) <u>Additional Facts On Habeas and Facts Established At Trial</u>

The statement of facts regarding the trial will necessarily be referenced as follows as referenced above in subsections (A) thru (C) Referred to as "TSF" followed by the volume and page number. Since the factual overview will also involve facts developed at the 5-1-02. motion To Deny Bail Hearing and Four separate pretrial hearings. They will be referenced as "BSF" and "PSF" respectively followed by the date, volume and page number. On 4-8-02 Calton after accidently drinking an unknown substance went to the hospital for treatment. See Ex "AA" app. p. 129-138. This accidental ingestion of an unknown substance affected Calton's blood sugar level for several weeks, causing him to go into convulsions hours after the offense resulting in hospital emergency room care on 4-24-02 and again on 5-14-02. See Ex "BB" TSF p. 41-44 app. p. 139; Ex "CC" app p. 140-144; Ex "DD" TSF v4 p. 99 app p. 145. On 4-23-02 at 9 P.M Calton drove to the victim's residence due to mental and physical infirmities caused by hypoglycemia at that Time. Calton also thought someone else was in his vehicle that night. However there was not. See Ex "B" app. p. 3. The victim testified that he was cooking when Calton arrived. See Ex "EE" TSF v.3

Federal Petition For Habeas Corpus Filed In State Court p. 14 of 40

p.20-22 app. p. 146-147. The 'Butcher Knife' seized out of Calton's vehicle by police belonged to the victim he was utilizing to cook his dinner when Calton arrived at the victim's residence. The victim testified he engaged in conversation with Calton. See Ex "EE" TSF V3 P.23-24 app. p. 147. States witness Craig Tate testified the victim was leaning inside of Calton's vehicle while conversating with Calton. See Ex "D" TSF V8 p.163-164 app. p.10. The victim testified that he had a cocaine problem. See Ex "EE" TSF V3 p.30 app. p. 149. The victim testified he had a drug problem during the time of the offense. See Ex "FF" TSF V3 p.48 app. p. 150 An excerpt from the victim's medical records for treat—ment he received for his gunshot wound that night on 4-23-02 proves he had cocaine in his system. See Ex "GG" app. p. 151-152. Due to the victim's aggressive and fearless behavior fueled by his cocaine use and abuse led Calton to reasonably believe despite his mental infirmities caused by hypoglycemia that the victim was attempting to use deadly force against Calton while the victim was leaning and reaching inside the driver's side window of Calton's parked vehicle brandishing a 'Butcher Knife' in a threatening manner toward Calton as he sat in the drivers side seat. Which resulted in Calton to grab the blade of the 'Butcher Knife' attempting to ward off the apparent attack. Upon grabbing the blade the victim cut Calton. See Ex "B" app. p. 3; Ex "F" TSF V8 p. 181-182 app. p.16. In this sequence of events Calton grabbed the victim's gun he possessed in a gun holster. See Ex "HH" TSF V4 p.140 app. p. 153 And shot the victim one time with the victim's own gun in response to being cut by the victim with the 'Butcher Knife' in question. Ex "E" TSF V8 p. 209 app. p.11 ; Ex "F" TSF V8 p. 181-182 app. p.16; Ex "G" TSF V6 p. 72 app. p.17 Marcus Heard testified that while the victim sold crack cocaine out of his residence he would wear a firearm in a gun holster. See Ex "HH" TSF V4 p.140 app. p. 154. Mr. Heard purchased crack cocaine from the victim for years

Federal Petition For Habeas Corpus Filed In state Court P 15 of 40

and smoked the purchased crack cocaine at the victims residence and would observe the victim in possession of a firearm at all times. Id at p.139-140 app. p.153. The victim not only used crack cocaine but sold it as well and had no less than five search warrants executed at his residence on 4-21-99, 11-6-00, 3-6-01, 4-11-02 and 2-21-03. The police were seeking for and found crack cocaine and even seized a gun inside a gunholster on one occassion see search warrant returns Ex "II" thru "MM" app. p. 154-159. The police seizing a pistol inside a gunholster corroborates Mr. Heard's testimony that the victim wore a pistol on his side. See Ex "HH" TSF V4 p.139-140 app. p. 153; Ex "JJ" app. p. 155. Mr. Heard was such a frequent visitor at the victim's residence and spent substantial time there. That Mr. Heard was present during a search warrant execution at the victims residence on 4.21.99 and was also arrested along with the victim that day. See Ex "II app. p.154. Further corroborating Mr. Heard's testimony on how much time he spent at the victim's residence. And while there always observed the victim in possession of a firearm on his person. About 50 miles away from the crime scene Calton was observed by police officer James Puckett driving in an erratic and unsafe manner through a night school parking lot. See Ex "NN" TSF V5 p. 74-75 app. p. 160 officer Puckett's observation of Calton's driving led him to initiate a traffic stop that led to Calton's arrest two hours after the offense. Id at p. 78 app. p. 161. Calton's erratic driving nowhere near where the offense occurred was due to Calton thinking someone was in his vehicle trying to kill him. Due to the same Calton made a 911 phone call at a pay phone right before officer Pucket initiated a traffic stop. Calton stated to the 911 call taker: "Someone is trying to kill me" See Ex "OO" app. p. 162-164 officer Puckett testified that Calton's driving during the police chase was

Federal Petition For Habeas Corpus Filed In State Court p. 16 of 40

Unlike someone who was trying to get away from police. Due to Calton was merely driving going back and forth, going here and there. In officer Puckett's opinion it appeared as though Calton was confused. See Ex "PP" TSF V5 p.96-97 app. p. 165-166. Police observations describing Calton's behavior at the arrest scene about two hours after the offense occurred memorialized: " bizarre behavior, confusion, appearing distracted, passiveness and uncooperative". It was also noted that Calton was experiencing head pain and dizziness. See Ex "T" app. p.89-92, Ex "QQ" TSF V4 p.19-20 app. p.174. Although Calton also appeared intoxicated at the time he did not smell of alcohol. See Ex "RR" TSF V5 p.87 app. p.176. Nor was Calton charged with being under the influence of drugs or alcohol. See Ex "SS" TSF V4 p.72 app. p.177. Defense expert Dr. Roy Cavaino testified that appearing intoxicated is a sign of hypoglycemia as well as confusion, abnormal behavior and dizziness are symptoms of hypoglycemia. See Ex "TT" TSF V5 p.117 and 123 app. p.178-179. Dr. Cavaino testified that after reviewing the 'police screening form' that memorialized Calton's police observed behavior two hours after the offense. Opined that Calton was experiencing hypoglycemia. Id at p.124 app. p.179. State's expert Joe Snow testified that the 'police screening form' memorializing Calton's police observed behavior suggested hypoglycemia. See Ex "UU" TSF V6 p.61-62 app. p.180. Paramedic F. Simon testified that if the blood sugar level falls low enough it can lead to an epileptic seizure. See Ex "Y" TSF V7 p.27 app. p.126. Paramedic W. Johnson testified the epileptic seizure Calton sustained mere hours after the offense was caused by an extremely low blood sugar level that was below 25. See Ex "BB" TSF V7 p.43-44 app. p.139. Expert testimony at trial established a normal blood sugar level is between 80-120. See Ex "PP" TSF V5 p.105 app. p.168. Calton testified that about a week before the offense he began experiencing dizziness

headaches and felt abnormal. See Ex "VV" TSF V8 p.196 app. p.181 Calton testified that his recollection about a week before the offense up until about three weeks after is vague and filled with events that are not true and consists of events that Calton considered psychotic episodes. See Ex "F" TSF V8 p.180-182 app. p.15-16-1 Ex "WW" TSF V8 p.169-170 app. p.182. Although Calton described his experiences at the time as psychotic episodes it was undoubted hypoglycemic states causing confusion he experienced. As a direct result of Calton's accidental ingestion of an unknown liquid substance he drank on 4-8-02. That burned his throat going down. which was two weeks before the 4-23-02 offense date and about a week before Calton started feeling the effects of his accidental ingestion. That sent Calton to the emergency room. See Ex "AA" app. p.129-138. In the discharge instructions from Harris methodist Hospital noted that delayed effects may occur from this accidental ingestion disrupted the proper regulation of Calton's blood sugar level between 4-16-02 and 5-14-02. As established by Calton's hospitalization for hypoglycemia hours after the offense on 4-24-02 and again on 5-14-02. These dates 4-8-02 the day the accidental ingestion occurred, 4-16-02 the day effects of the accidental ingestion began, 4-24-02 the first hospitalization for hypoglycemia and 5-14-02 the second hospitalization for hypoglycemia. The aforementioned dates of 4-8-02 and 5-14-02 bookend the 4-23-02 offense date. See Ex "CC" app. p.140-144 ; Ex "DD" TSF V4 p.99 app. p.145 In fact during this time doctors requested Calton's blood sugar level be monitored twice daily due to its irregularity. See Ex "PP" TSF V5 p.101-109 app. p.167-169. Kewanda Lawson

Federal Petition For Habeas Corpus Filed In State Court p.18 of 40

that on 4-16-02 Calton was not acting himself and seemed to be experiencing confusion. See Ex "XX" TSF V4 p.83 app. p.183 Ms. Lawson testified that Calton's condition deteriorated after 4-16-02 up until the offense date of 4-23-02 and that it appeared to her that Calton was in a state of confusion. Id. at p.85 app. p.182. Ernest Knox testified that on 4-16-02 he noticed Calton's confused state and that Calton at times did not appear to know what was going on. See Ex "YY" TSF V7 p.3-4 app. p.185. Mr. Knox testified that Calton's condition deteriorated from 4-16-02 up until the offense date of 4-23-02 that Mr. Knox described as state of confusion. Id at p.5 app. p.186 Defense expert Dr. Cavaino testified that an individual can be capable of actions but may not be consciously aware of what he is doing and may not have knowledge of events that occurred while in a hypoglycemic state. See Ex "TT" TSF V5 p.119-120 app. p.178-179. State's expert Dr. Jack Price a forensic psychologist was hired by the State to evaluate Calton's mental processes at the time of the offense. Prior to personally evaluating Calton Dr. Price reviews documents permit him to form his expert opinion. See Ex "22" TSF V8 p.17-20 app. p.187. Dr. Price testified despite Calton's mental and physical infirmities caused by hypoglycemia he was not suffering from some type of psychotic episode or psychotic state at the time of the offense. Id at p.29-30 app. p.190. Dr. Price testified despite Calton's mental and physical infirmities caused by hypoglycemia resulting in him to experience confusion, bizarre behavior and hallucinations. Did not preclude Calton from having the sufficient mental capacity to reasonably believe that the crack cocaine fueled victim brandishing a 'Butcher Knife' toward Calton in a threatening manner was attempting to use and used deadly force against Calton by cutting Calton. Id. The evidence at trial raised all elements of a deadly force/self-defense theory including a 'Reasonable Belief' as substantiated by the trial Court's charge to the jury on

self-defense. See Ex"E" TSF V8 p.224 opp. p. 14. The trial court's certainty the evidence raised self-defense withstood the prosecutor's vehement objection the evidence did not raise self-defense/deadly force defensive theory. To which the trial judge overruled. Id at p. 221 opp. p. 14.

(E) The Probable Impact Of The 'Butcher Knife' With The Exposure Of The False '3 shot Theory' and Sans The 'made up motive' Upon The Persuasiveness Of The State's Case As A Whole Now In That Light

   The state's case was based on a false '3 shot Theory' and made up motive' the state knew were false. Both hinged on the victims misleading testimony. The victim testified: "Calton opened his car door, stepped out in front of the victim, put the gun over the victim's eye and fired the first shot. After being shot once the victim testified that he went down on one knee. And while he was on one knee Calton placed the gun up to the back of his head and fired a second shot. The victim testified that after Calton fired the second shot. He was lying on his back and Calton walked up and stood over him and stuck the gun up to his head and fired a third shot. See Ex"EE" TSF V3 p.26-27 opp. p. 148. When asked how many times he was shot while testifying at trial. The victim lied and said 'three times' Id at p. 27 opp p. 148. The emergency room doctor testimony establishes the victim was treated for one gunshot wound. See Ex"G" TSF V6 p. 72 app. p. 17. As an impermissible plea for sympathy the victim lied by testifying falsely that he lost consciousness after being shot. See Ex"FF" TSF V3 p.47 opp. p. 150. Ten minutes after the offense in response to paramedic Joe Snow's questions. The victim denied a loss of consciousness. And when the paramedic asked the victim how many times he had been shot? The victim answered: " I think I Heard One shot". See Ex"AAA" TSF V 6 p53

Federal Petition For Habeas Corpus Filed In State Court p. 20 of 40

app. p. 191. The victim's excited utterance or dying declaration generally reliable statements when made. When the victim stated: "I think I heard one shot." Corroborates the doctors testimony that establishes the victim was only shot one time. Leading to the treatment of only one gunshot wound. See Ex "G" TSF V6 p. 72 app. p. 17. Which exposes the states fraudulent '3 shot theory'. How can a denial of "loss of consciousness" and "I think I heard one shot" morph into the victim's trial testimony paraphrased above? One things for certain the gunshot wound did not affect the victims ability to recall the offense. Due to at the victim made the statements "Denying A Loss of Consciousness" and "I Think I Heard One Shot" made to the paramedic. The paramedic noted while treating the victim that night he was alert, lucid and oriented. See Ex "AAA" TSF V6 p. 53 app. p. 191. makes clear the victim's gunshot wound did not affect his ability to recall the offense. In turn makes clear the victim's trial testimony was the willful intent to mislead the Jury. See Kyles v Whitley 115 Sct 1555, 1571 (1995) ("Evolution over time of a given witnesses description can be fatal to its reliability"). The state in its attempt to preserve the false '3 shot Theory' put on the record the following morning after the victim testified the previous afternoon by stating: "The victim Everette Angle was sick yesterday after he testified. He has now been admitted to the hospital to have an emergency surgery". See Ex "QQ" TSF V4 p. 4 app. p. 170. This lie was exposed to the truth by state's attorney Charles Brodenburg's statement during summations stating: "The victim Chuck Angle is sitting back here." See Ex "H" TSF V9 p. 8 app. p. 19. Thus after both sides had rested and closed. With the defense having no opportunity to impeach the fabricated '3 shot Theory' hinged on the victim's false

Federal Petition For Habeas Corpus Filed In State Court p. 21 of 40

testimony. The victim suddenly recovers from his alleged hospita-
lization. Additionally in an attempt to conceal the fraudulent
'3shot Theory' the state subpoenaed an irrelevant set of medstar
Ambulance Service medical records for treatment rendered
to the victim on 2-16-02. See Ex "BBB" app. p. 192-194. In addi-
tion to the relevant 4-23-02 offense date medstar medical
records. See "CCC" app. p. 195-199. The state's diabolical plan
was to provide the irrelevant 2-16-02 records to Calton
which is how and why Calton obtained the irrelevant 2-16-02
records memorializing treatment rendered to the victim two
weeks before the offense. The state had good reason to sup-
press the 4-23-02 medstar medical records. This is so because the
4-23-02 memorialized the victim's statement: "I think I heard one
Shot" See Ex "CCC" app. p. 195. There's additional proof the state
sponsored the false '3shot Theory'. The failure to call paramedic
Joe Snow as a state's witness drives this point home. Mr. Snow
was the author of the relevant 4-23-02 medstar medical records that
refutes the state's fabricated '3shot Theory'. Which was the reason the
state did not have and had no intentions of calling Mr. Snow as a state
witness. The state closed on 5-11-04 before calling Mr. Snow
and stated: "Mr. Snow is supposed to be here. He's the paramedic
that attended the scene". See Ex "DDD" + SF V3 p. 162 app. p. 200. Calton
Knowing the state had something to hide subpoenaed Mr. Snow as
a defense witness. See Ex "EEE" TSF V6 p. 31-32 app. p. 201. Also See
U.S. v Jordan 49 F3d 152, 158 (5th Cir 1995) ("Recognizing "both par-
ties implied that failing to call witness indicates that witness
would hurt the others cases respectively"). It wasn't until Mr. Snow
testified late in trial that Calton finally received the relevant
4-23-02 medstar medical records. As established by Calton's

Federal Petition For Habeas Corpus Filed In state Court p. 22 of 40

statement upon belated receipt during trial : "Your honor I was supposed to get this I never received it". See "EEE" V6p36 app. p.202 Calton was unable to effectively utilize the medical records due to the victim's alleged hospitalization. The state not only suppressed records that would have exposed the falsity of its case. The state compounded the error by arguing the false '3 shot Theory' during their summations stating : "Defendant comes around shoots him once in the face. Stands over him, shoot him two more times". See Ex "FFF" TSF V9 P.36 app. p. 203. Thus rather than a mere omission, there was an additional error of commission. The states argued during summations referring to false testimony reinforced the deception. See U.S. v Bashan 595 F2d 231, 243 n.17 (5th cir 1979) The State's Closing argument makes clear it hinged its case on the false '3 shot Theory'. See Flemming v state 949 sw2d 876, 881 (Tex App. Houston [14th Dist]1997)("Recognizing "Closing argument is area where trial strategy is most evident"). In addition to the false '3 shot Theory' the state also fabricated a 'made up motive' it also knew was false. By eliciting false testimony alleging the reason Calton committed the offense was due to word allegedly got back to Calton that the victim confirmed to a detective of Calton's possible involvement in a murder. However, the victim's testimony at Calton's 'Hearing To Deny Bail' proceeding establishes, that Calton's name never came up during the victims and detectives conversation. At the 5-1-02 'Bail Hearing' the victim was cross-examined : Q. "Did detective Boetcher or detective myers ever mention anything to you about Calton?" A. "No". Q. "Never mentioned his name?" A. "No". Q. "You ever mention Allen's name to them?" A. "No" See Ex "GGG" BSF 5-1-02 V.1 of 1 p.80 app p. 204. The "made up motive" was detrimental to Calton's defense on par with the false '3 shot Theory'. Prosecutor David Hateman represented the state at Calton's "Bail Hearing" on 5-1-02 and at the trial on 6-10-02

Federal Petition For Habeas Corpus Filed In State Court p.23 of 40

and knew or should have known the victim's testimony establishing motive was false. Id at p.81-82 app. p. 205-206. Sans the made up motive there was no other reasonable explanation for Calton to have committed the offense as established by victim's testimony. Who testified there was no animosity or bad blood between the victim and Calton. See Ex" HHH" TSFV3 p 59-61 app. p. 208-209. So motive notwithstanding its falsity became a necessity to give the state's case some teeth. Cf House v Bell 126 SCt 2064, 2079 (2006) (Recognizing "when identity is in question motive is key"). In Texas a motive when presented to a jury tends to raise an inference that the accused had a motive to commit the crime alleged. See Crane v state 786 sw2d 338, 349-50 (Tex Crim. App. 1990). A motive in Texas is also a circumstance indicating guilt. See Harris v State 727 sw2d 537, 542 (Texcrim App 1989). At trial the victim also lied about his inclination to possess a firearm on his person. On cross-examination Calton asked the victim: Q. "In the five years that you lived at 1744 wiseman Ave has there ever been a firearm at the residence?" A. "No." See Ex" DDD" TSFV3 p. 162 app. p. 200. Calton knew this was a lie and tried to refresh the victim's memory with this question: Q. "During the search warrant execution on the residence no gun was ever found?" State's Attorney Haterman objected. Id at p62 app. p. 203. Mr. Haterman also knew the victim was lying hence the objection. In fact Mr. Haterman provided the defense the search warrant returns establish the victim was a gun toting prolific crack cocaine user, abuser and dealer who was shot one time with his own gun by Calton in self-defense. See Ex"E" TSFV8 p.209 app. p. 11, Ex" II" thru "NN" app. p. 154-159; Ex" III" PSF 1-16-04 v.1of1 p. 8-9 app. p. 210-211. Also See Ceasar v State 939 sw2d 778, 781 (Tex. App. Houston [14Th Dist] 1997) ("Appellant engaged in a fight with victim, losing his own gun in struggle, and shot victim with victim's own gun"); Van Brackle v state 179sw3d

708, 711-12 (Tex App Austin 2005) ("Appellant wrestled with victim for victim's gun, got control of victim's gun and shot victim with victim's own gun"). Finally the only eye witness to the offense Craig Tate and the victim were both hard drug abusers. Mr Tate was caught by police discarding a used syringe noted as Exhibit "1" in a police report. When Mr Tate was designated as arrested person #3 in the police report memorializing a search warrant execution at the victim's residence on 4-11-02 days within the 4-23-02 offense date. See "JJJ" app. p. 212-215 the victim's medical records for his gunshot wound treatment on 4-23-02. Proves cocaine was in the victim's system at the time of the offense. See Ex "GG" app. p. 151-152 cf Castenoda v State 23 SW3d 216, 219 (Tex. App. El Paso 2000) ("Prosecutor conceding the admitted cocaine use on the night in question effects credibility") with the state's false "3 shot Theory" and "made up motive" now exposed to the truth. with this Court conducting the factual innocence test considering all of the above facts that must be considered. See Schlup v Delo 513 U.S. 298, 327-28 (1995). Including the false '3 shot Theory' and 'made up motive' and the probable impact of the 'Butcher Knife' admitted into evidence at trial. In direct support of the self—defense theory raised at trial. Upon the persuasiveness of the states case now that its been exposed as a fraud upon the court. Reasonably allowing this court to find that a reasonable probability exists that a jury would have entertained a reasonable doubt regarding guilt

(F) Since The Judiciary Act Of 1789 States Courts Had Had Original Jurisdiction To Adjudicate Claims Arising Under Federal Law

    Since the Judiciary Act of 1789 the drafters of the Constitution originally contemplated that the state courts would serve as

trial Courts for adjudication of federal law; along with the Courts Congress might create. The moses Taylor 71 US. 411, 429 (1867) ("The Judiciary Act of 1789, in its distribution of jurisdiction to the several federal Courts, recognizes and is framed upon the theory that in all cases to which the judicial power of the United States extends. Congress may rightfully invest exclusive jurisdiction in the federal Courts. It declared that in some cases, from the commencement, such jurisdiction shall be exclusive, in other cases it determines at what stage of procedure such jurisdiction shall attach, and how long and how concurrent jurisdiction of the state Courts shall be permitted")

The Conscious compulsion of state courts dates back to the First Congress and origin of the Constitution. By way of the Act of June 5, 1794, ch. 45.10, 1 Stat. 313, 315 and the Act of July 20, 1790, ch 29.2, 1 Stat, 131, 132. Congress expressly vested state courts with concurrent jurisdiction over subject of "suits for penalties and forfeiture incurred, under the laws of the United States". Under current doctrine Congressional Statutes defining federal court jurisdiction are interpreted with a presumption of concurrent rather than exclusive jurisdiction. See Yellow Freight. Sys. v Donnelly 494 U.S. 820, 823 (1990) ("under our system of dual sovereignty, we have consistently held that state courts have inherent authority, and thus are presumptively competent to adjudicate claims arising under the laws of the United States". (citing Tafflin v Levitt 493 U.S. 455, 458 (1990)) Also see Charles Dowd Box Co. v Courtney 368 U.S. 502, 507-508 (1962) ("we start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule")

Federal Petition for Habeas Corpus Filed In State Court p. 26 of 40

The Judiciary Act of 1789 and 1867 affording state courts habeas jurisdiction. Now codified in 28 U.S.C § 2241. Has remained undisturbed by AEDPA. See INS v St. Cyr 533 U.S. 289, 305 (2001) (§ 2241 descends directly from the Judiciary Act of 1789 and 1867. Its Text remained undisturbed by either AEDPA or IIRIRA). Thus this court's habeas jurisdiction remains intact notwithstanding no U.S. District Court has jurisdiction over the claims raised herein. As 28 U.S.C. § 2244 (b)(3)(A) only applies to second or successive habeas petitions filed in a U.S. District Court in the first instance. See Id. Also see Vicki C. Jackson Symposium's Printz and Testa The Infrastructure of Federal Supremacy 32 Ind. L. Rev. 111, 112 (1998) ("In cases where no lower federal Court has jurisdiction, state courts may be constitutionally equivalent to the lower federal courts for purposes of meeting requirements that some court whose action is reviewable by the Supreme Court have jurisdiction"). See also Howlett v Rose 496 U.S. 356, 367 (1990) ("Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that Courts ... are a more convenient forum ... but because the constitution and laws passed pursuant to it are as much laws in the states as laws passed by the State legislature")

(G) No State Law Can Prohibit Nor Can A State Court Refuse Its Duty TO Exercise Jurisdiction over Federal Law Claims Filed Therewith

A state Court's jurisdiction over federal law claims cannot be refused. See Testa v Katt 350 U.S. 386, 389-90 (1947) ("Court making clear that Supremacy Clause also requires state courts to engage in affirmative action through entertaining federal causes of action"). Cf Thomas v Allen 837 JW 2d 631, 632 (Tex. 1992) ("A state Court may not deny a federal right, when the parties and controversy are properly before it, in the absence of a valid excuse") (Quoting Howlett, Supra). The Supreme Court has recog—

Federal Petition For Habeas Corpus Filed In State Court p. 27 of 40

nized three occasions where a state court has a valid excuse for refusing to entertain a federal cause of action: (1) State statute permits discretionary dismissal of federal or state claim were neither the plaintiff nor defendant was resident of forum state; (2) grounds for the cause of action arose outside of court's territorial juris- diction; (3) the ability of state courts to apply, in a non discretio- nary, fashion, the doctrine of forum non conveniens to bar ad- judication of claim. See Howlett 456 U.S. at 370

(H) State Courts when Exercising Jurisdiction on Federal Claims must Apply Federal Constitution, Statutory And Federal Common Law Thereto

The Supremacy Clause makes federal law "the Supreme Law of The Land" See U.S. Const. Art 6 Cl. 2. Consequently, a state court that is confronted with issues of federal law is **bound** by the Supremacy Clause to apply federal law in resolving those issues. See Howlett 496 U.S. at 369 n. 16 (In relevant part stating "All presuppose that state courts presumptively have the obligation to apply federal law to a dispute before them ... ~")

(I) The 'Butcher Knife' As Newly Discovered Evidence Which The Instrumentality Of Calton's Self-Defense Theory At Trial Establishes Calton's Innocence Is Rare And Exceptional

Calton's constitutional claims are not based on innocence, but rather on his contention that the withholding of evidence by a state official or agent of the state denied him all of the panoply of protections offered to criminal defendants by the constitution. See Schlup v Delo 513 U.S. 298 (1995) Calton is offering his claim of innocence to obtain post conviction hea- ring on the merits in this subsequent habeas proceeding. Of his constitutional claims bringing him within a "narrow class of cases which implicate a fundamental miscarriage of Justice. See Id at 314- 15 ("Court may not reach merits of successive or abusive claim

Federal Petition For Habeas Corpus Filed In State Court p. 28 of 40

absent showing of cause and prejudice or fundamental miscar-
riage of justice"). Also Id at 316( suggesting that court has held ma-
nifest miscarriage of justice doctrine to be mandatory, not discre-
tionary: "If a petitioner . . . presents sufficient evidence of
innocence . . . the petitioner should be allowed to pass through the
gateway and argue the merits"). To meet the fundamental miscar-
riage of justice exception a petitioner must make a persuasive sho-
wing that he is actually innocent of the charges against him. See
Coleman v Thompson 501 U.S. 722, 750(1991); Ward v Cain 53 F3d 106,108 (5th
Cir 1995). Essentially, he must show as a factual matter he did not
commit the crime for which he was convicted. See Farmer v Anderson
188 F3d 635, 644 (5th Cir 1999); Bousley v U.S. 523 U.S. 614, 623 (1991)("Actual
Innocence" means "Factual Innocence", and not merely legal insufficiency);
Sawyer v Whitley 112 Sct 2514, 2519 (1992) ("In order to satisfy the
'miscarriage of justice' test, the petitioner must supplement his consti-
tutional claim with a colorable showing of factual innocence)

To satisfy the "factual innocence" standard, a petitioner must esta-
blish a fair probability that, considering all of the evidence now avai-
lable, the trier of fact would have entertained a reasonable doubt
as to defendant's guilt. Id at 2715-19(Holding that 'factual innocence' means
a fair probability that in light of all the evidence, the trier of facts
would have entertained a reasonable doubt as to the defendant's
guilt~). Calton's defense at trial was that he was justified in com-
mitting the offense under self-defense. See Tex Penal Code §§ 9.31, 9.32.
The evidence at trial raised self-defense and the jury was charged
thereon. See Ex "E" TSF V8 p.224 app. p.14. Calton's contention is
that he's actually innocent via self-defense in light of Finley v
Johnson 243 F3d 215 (5th cir 2001). In 'Finley' the accused pointed
to new evidence which is both undisputed and highly probative
of his affirmative defense of 'Necessity' under Texas Penal Code

Federal Petition For Habeas Corpus Filed In State Court p. 29 of 40

§ 9.22, which would have significantly bolstered 'Finley's necessity defense. See Finley 243 F3d at 221. Although the district Court concluded that 'Finley' was unable to meet the miscarriage of justice exception because he never denied that he abducted the victim. The district court reasoned that merely showing facts which supported a defense of necessity which the jury might or might not have accepted does not meet the requirement for showing of 'Actual Innocence' because there is no claim the defendant did not actually commit the acts of which he is accused. Id at 220. The 5th Circuit Found that a troublesome proposition due to 'Finley's' defense was that, although he committed the acts alleged against him, he was innocent of the crime of Kidnapping because he reasonably believed his acts were immediately necessary to avoid imminent harm to Towery's wife and daughter. Id at 220. Under these circumstances, the 5th Circuit held, the district court's conclusion that 'Finley' cannot show 'actual innocence' seems too restrictive interpretation of the requirement. Id at 221. The 5th Circuit concluded that showing facts which are highly probative of an affirmative defense which if accepted by a jury would result in an acquittal constitutes a sufficient showing of 'actual innocence' to exempt petitioners claim from procedural default. Id. at 221-22. The "Necessity Defense" in 'Finley' and 'Calton's' "self-defense Defense" are both found in chapter nine of the Texas Penal Code which outlines justification defenses absolving a defendant of criminal responsibility. See §§ 9.22, 9.31, 9.32 Giesburg v State 984 SW2d 245, 248 n2 (Tex-Crim App. 1998) ("Justifications for conduct are set out in chapter nine of Texas Penal Code"). As determined in 'Finley' that via the 'necessity' defense a sufficient showing of 'factual innocence' was made. So too should this court determine Calton has made a sufficient showing of factual innocence via the comparable Texas defense of 'self-defense'. Calton's actually innocent of attempted murder due to having the justification

Federal Petition For Habeas Corpus Filed In State Court p. 30 of 40

to commit the act under Texas penal Code §59.31, 9.32. Due to prior to Calton shooting the victim first tried to stab Calton and subsequently cut Calton's right hand with the 'Butcher Knife' in question, when Calton grabbed the blade warding off the apparent attack. See EX "B" app. p.3; Ex "F" TSF v8 p.181-182 app. p. 16 . Also see Ransome v Johnson 126 F3d 716,724 (5th cir 1997) ("Recognizing the wounds to Pequeno's left hand were consistent with defensive wounds as Pequeno attempted to ward off the attack =) Calton self-defense theory at trial that's now bolstered by the discovery of the 'Butcher Knife' establishes Calton has met the actual innocence federal miscarriage of Justice exception. Additional support can be found in Fairman supra. In 'Fairman' the petitioner's claim of self-defense at trial was supported years later by an eye witness who recanted his earlier trial testimony to the contrary. See Fairman 188 F3d at 644. The 5th Circuit held that the petitioner satisfied the 'ward', supra, threshold for showing actual innocence because belief in the eyewitness testimony Confirms the petitioner's claim of self-defense such that it was not Just possible but more likely than not no reasonable Juror would have convicted him. Id at 644.

With the state's fraudulent case that's been exposed herein, coupled with the 'Butcher Knife' as new evidence establishes Calton's 'factual innocence' In light of the constitutional errors and thus meets the requisite probability that Calton is actually innocent under his self-defense theory. See Schlup 513 us at 327 ("To mount a claim of actual Innocence, petitioner must support his allegations of constitutional error with reliable evidence whether it be exculpatory, scientific, trust worthy eyewitness accounts, or critical physical evidence that wasn't presented at trial"); Kirkpatrick v whitley 992 F2d 491, 495 (5th cr 1993) (Kirkpatrick's claim of self-defense would establish a lack of criminal responsibility under the test announced in Sawyer v Whitley

Federal Petition For Habeas Corpus Filed In State Court p. 31 of 40

945 F2d 812 (5th Cir 1992) aff'd 112 SCt 2514, 2522 (1992).

(J) Calton's Prima Facie Showing Of Actual ~~Innocence~~ Innocence under 'Schlup' made In The State Court Habeas Proceeding Is Accorded Deference And The Presumption of Correctness under Federal Law

"The Texas subsequent applications provisions In Articles 11.07 and 11.071 were enacted by the Texas Legislature In response to Schlup v Delo". See Ex parte Brooks 219 sw3d 396, 399 (Tex Crim App 2007) "The purpose of the subsequent-writ provisions Is to provide review only In those cases where the legal basis for the claim was previously unavailable, or to remedy a 'miscarriage of Justice' Id at 400. The 'Brooks' Court concluded by stating:

"under 11.07 §4, we may not consider the merits of an application unless it includes sufficient specific facts establishing by a preponderance of the evidence that, but for a constitutional violation, no rational juror would have found the Applicant Guilty... this for the applicant to demonstrate that the constitutional violation at his trial resulted in a miscarriage of Justice". See Brooks 219 sw3d at 401. Thus when the Court denied Calton's subsequent habeas petition on 7-12-17 it was a merits review. See "White Card" EX" KKK" app. p. 216. Also See Ex parte Torres 943 sw2d 469, 472 (Tex. Crim. App. 1997) ("In our writ Jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means we declined to consider the claim for reasons unrelated to the claims merits"). which In turn establishes Calton made a sufficient showing of Actual ~~Innocence~~ Innocence under the miscarriage of Justice exception reaffirmed In Schlup v Delo, Supra. Despite the summarily denial of Calton's subsequent state application without an evidentiary hearing. The fin-

Federal Petition For Habeas Corpus Filed In state court p. 32 of 40

dings of the Texas Court of Criminal Appeals [Hereafter T.C.C.A.] that Calton made a prima facie showing of Actual Innocence under the federal Mis-carriage of Justice Exception or more precisely Art. 11.0754 adopting the aforementioned standard. Is to be accorded deference and the pre-sumption of correctness in a Federal Habeas proceeding. In resolution of Calton's actual innocence contention this court sitting in federal habeas must apply § 4(a)(2)'s `actual innocence' standard to decide whether a federal habeas petitioners new evidence demonstrated that but for a violation of U.S. Const no rational juror could have found him guil-ty beyond a reasonable doubt. Cf Williams v Thaler 602 F3d 291, 307-08 (5th Cr 2010) (applying § 5(a)(2)'s `actual innocence' standard to decide whether a federal habeas petitioner's new evidence demonstrated that "but for a violation of the U.S. Const. no rational juror would have found him guilty beyond a reasonable doubt."] Texas may exercise its preroga-tive to establish heightened barriers to subsequent state habeas applica-tions, and the federal habeas courts are obliged to faithfully apply those barriers in federal habeas proceedings as well. See Rocha v Thaler 619 F3d 3 89, 404 (5th Cu 2010)

　　Texas' adoption in 1995 by the legislature of the Federal Mixcar-Mage of Justice exception as its own in resolution of subsequent state applications. Binds a federal forum sitting in habeas. See Murdoch v City of Memphis 20 wall 590 (1875). It is not the province of a federal forum to re examine state court determinations of state law questions. See Estelle v McGuire 502 U.S 62, 67-68 (1991) ("we have repeatedly held that state courts interpretation of state law binds a federal habeas court determination sitting in habeas corpus"). Although the T.C.C.A. failed to remand the case to the trial court for it enter written findings of fact and conclusions of law. The presumption of correctness is equally applicable when a state appellate court as opposed to a state trial court, makes

Federal Petition For Habeas Corpus Filed In State Court p. 33 of 40

the finding of fact. See Summer v Mata 449 U.S. 539, 546-47 (1981) (Held that appellate court's findings are entitled to the same respect trial judge's findings receive"). The T.C.C.A's determination Calton made a prima facie showing of actual innocence under Schlup, supra should not be casually set aside. See Sharp v Bell 593 F3d 372, 379 (4th Cir 2010) ("where a state court looks at the same body of relevant evidence and applies essentially the same legal standard to that evidence that the federal court does under Schlup. § 2254(e)(1) requires that state court's findings of fact not be casually set aside"); Goldblum v Klem 510 F3d 204, 212, 221 n.13 (3d Cir 2008) ("Applying presumption of correctness under §2254(e)(1) in resolving Schlup claim"); Reed v Stephens 739 F3d 753, 772 and n.8 (5th cir 2008) (same). Also See Sharp 593 F3d at 380 ("Given the similarity of the state proceedings the petitioner's habeas claims under Schlup, the state court's factual determination should have exerted a heavy pull on the habeas court's adjudication"), making clear deference and a presumption of correctness applies here.

(K) Before Calton's Prima Facie Showing Of Actual ~~Innocence~~ Can Be Set Aside This Court Must Hold A Constitutionally Comporting Evidentiary Hearing

(1) Before the T.C.C.A's determination that Calton made the required prima facie showing of actual innocence, Can be superceded by this court an evidentiary hearing must be had, whether live or paper See e.g. Valdez v Cockrell 274 F3d 941, 942 (5th cir 2001) ("Evidentiary Hearing Can aid a federal court's assessment . . . .") Just as sure as Calton's burden would have been to rebut the state court's finding with clear and convincing if those state court's findings had concluded that Calton had not made a prima facie showing of actual innocence in the state habeas proceeding. When Calton in turn presented that some actual innocence contention in a federal forum. So too must respondent carry the burden of rebutting by clear and convincing evidence the prima facie showing of actual

Innocence Calton made in the state court. That must be accorded deference and the presumption of correctness here. No less so if Calton had not made a prima facie showing of actual innocence in the state habeas proceeding below. Thus unless respondent rebuts it by clear and convincing evidence it must stand. Cf Keeney v Tamayo-Reyes 504 U.S. 1, 10 (1992) (explaining "Just as the state must afford the petitioner a full and fair hearing on his federal claims, so must the petitioner afford the state a full and fair opportunity to address and resolve the claim on the merits"). The Due process and equal protection clauses of the 14th amendment requires no more or allows any less.

(III) <u>Butcher Knife As Newly Discovered Evidence Mandates Evidentiary Hearing</u>

Calton's petition is hinged on the discovery of new evidence i.e. the 'Butcher Knife' the instrumentality of his self-defense theory. That was suppressed by the police, state or judge or likely all three in concert. That bears upon the constitutionality of his detention mandates a hearing See Townsend v Sain 372 U.S. 293, 317 (1963) ("where newly discovered evidence is alleged in a habeas application, evidence which could not reasonably have been presented to the state trier of facts, the federal court must grant an evidentiary hearing") (overruled in part by Keeney, supra) "In the context of a Brady Claim, a defendant cannot conduct the 'reasonable diligent' investigation mandated by McCleskey v Zant' to preclude a finding of procedural default when the evidence is in the hands of the state" See Strickler v Greene 527 U.S. 263, 287-88 (1999)

(L) <u>Suppression Of Evidence By Police Favorable To Defense</u>

A 'Brady' suppression can also occur when the government

fails to turn over evidence that was known only to police and not the prosecutor. See Youngblood v West Virginia 547 U.S. 867, 869-70 (2008), Kyles, supra; Strickler, supra.

(M) <u>Suppression of Evidence By Prosecutor Favorable To Defense</u>

The State's suppression of evidence violates due process as guaranteed by the 14th amendment. If the evidence is material to either guilt or punishment. See Brady v Maryland 313 U.S. 83, 87 (1963). There are three elements to a 'Brady' claim: (1) the evidence must be favorable to the accused', (2) the evidence must have been suppressed by the State', and (3) the evidence must be material, i.e prejudice must have ensued from its non-disclosure. See Banks v Dretke 540 U.S. 668, 691 (2004).

(N) <u>Suppression of Evidence By Judge Favorable To Defense</u>

" The Floor established by the 14th amendt. clearly requires a fair trial in a fair tribunal before a Judge with no actual bias against the defendant." See Withdrow v Larkin 421 U.S. 35, 46 (1975). A Judge who, dishonestly suppressed exculpatory evidence to the defense is 'biased' in the most basic sense of the word. Cf Bracy v Gramley 520 U.S. 899, 905 (1997) ("A Judge who accepts bribes from a criminal defendant to fix the defendant's case is 'biased' in the most basic sense of that word"). The 14th amendt. due process requirements for a fair and impartial Judge will not let stand the conviction of a trial presided over by a Judge who dishonestly suppressed evidence of innocence. Cf Edwards v Balisok 520 U.S. 641, 647 (1997) (Due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence"). A trial before

a Judge that is not impartial results in structural constitutional error that would require reversal without resort to a harmless error analysis. See Arizona V Fulminante 499 U.S. 279, 309-10 (1991) A criminal defendant tried by a partial Judges is entitled to have his conviction set aside, no matter how strong the evidence against him. See Tumey V Ohio 273 U.S 510, 535 (1927), Arizona 499 u.s. at 280. In other words Judicial impartiality automatically vitiates a verdict.

(D) The materiality of The 'Butcher Knife' To Calton's Defense. The Prejudice Sustained In Its Absence That Rendered Self-Defense Theory Inviable

Had the 'Butcher Knife' been available for trial it would have invested Calton's self-defense theory at trial with merit because it would have reasonably qualified as a deadly weapon. Any knife described as a 'Butcher knife' by the seizing police officer was undoubtedly a very large knife. See Ex "A" app.p.1 'An object may be a deadly weapon per se if it is either a firearm or anything manifestly designed, made or adopted for the purpose of inflicting death or serious bodily injury. See Thomas v state 821 sw2d 616, 620 (Tex.Crim App. 1991) In Texas a knife may be a deadly weapon depending on its size, shape, sharpness, the manner of use or intended use and its capacity of causing death or serious bodily injury. See Blain v state 647 sw2d 293, 294 (Tex. Crim. App 1983). Thus Calton had the burden to establish the victim's capability to inflict death or serious bodily injury with the 'Butcher knife'. To justify his use of deadly force. Admitting the 'Butcher knife' into evidence was the best evidence to do so. Cf Bailey v state 46 sw 3d 487, 490-91 (Tex. App Corpus Christi 2001) ("A board is not a deadly weapon per se. So the state was required to prove that, in the manner of its use or intended use, the board was capable of causing death or serious bodily injury") Cf Revell v state 885 sw2d 206, 209 (Tex.App. Dallas 1994) ("when an indictment alleges that appellant used or exhibited a deadly weapon, to-wit: a knife, the evidence must establish that the knife was

in fact deadly"); Tucker v State 274 SW3d 686, 691 (Tex Crim App. 2007)("The state is not required to show the "use or intended use caused death or serious bodily injury", but that the use or intended use is capable of cause death or serious bodily injury"); Johnson v State 919 SW2d 473, 477 (Tex App. Fort Worth, pet ref'd)(Holding that the state must Prove" the thing used as a weapon was capable of causing death or serious bodily injury"). If a picture is worth a thousand words. The critical nature of the 'Butcher Knife' as the instrumentality of Calton's self-defense theory at trial. Had it been available for trial and examined by the Jury was worth an acquittal. The age old adage 'seeing is believing' carries great weight. See Robertson v State 137 SW3d 807, 813 (Tex App who 2004)(Gray, J dissenting)(" If anyone has any question that the Knife at issue is a deadly weapon all he or she has to do is examine it"); Robertson v State 163 SW3d 730, 731, 734 (Tex. Crim App 2005)("Fact-Finder had the opportunity to examine the weapon and ascertain for itself whether weapon had physical characteristics that revealed its deadly nature) Alternatively had it been admitted into evidence would have allowed Calton to establish its deadly nature via expert testimony. See Hicks v State 837 SW2d 686, 690 (Tex. App. Houston [1st Dist] 1992)("Sgt. crenshaw testified that the Knife admitted into evidence could easily injure or Kill someone"). The 'Butcher Knife' wielding victim under the influence of 'crack cocaine' was undoubtedly capable of causing death or serious bodily injury. See Ex "GG" app. p. 151-152 the 'Butcher Knife' was the best and only evidence that would have corroborated Calton's testimony where he testified: " the victim tried to stab him with a knife. That he grabbed the blade warding off the attack that ended up inside his vehicle where the shooting took place. That was recovered by police". See Ex "F" TSFV8 p.181-182 app. p. 16 , Ex "A" app p 1. Calton's self-serving testimony without the 'Butcher Knife' to corroborate the same was hardly believable on its own. See Arizona 499 U.S. at 298-99

Federal Petition For Habeas Corpus Filed In state Court p. 38 of 40

("Evidence not merely cumulative if it corroborates other evidence that is unbelievable on its own") Calton's testimony that police had recovered a 'knife' and then his failure to produce it at trial was the functional equivalent to a 'speaking silence' that is prejudicial as a matter of law. Cf Harris v Reed 858 F2d16, 19 (1st Cir1988)("Failure to produce Expert witness in support of defense theory introduced in opening statement is a 'speaking silence' that is prejudicial as a matter of law") Especially so when the prosecutor brought the matter to the jury's attention as a direct attack on Calton's failure to produce the 'Butcher Knife'. When the prosecutors cross-examination of Calton and closing argument both implied 3 "That if a 'Knife' had been seized by police and played a role in the offense Calton would have subpoenaed it and produced it at trial. See Ex "E" TSF V8 p. 215-216 app. p. 12, Ex "H" TSF V9 p. 9-10 app. p. 19 The jury had good reason to find Calton's self-defense theory dubious at best. Calton's failure to produce the knife seized by police he was cut with created a negative inference against Calton based upon his failure to produce the 'Butcher Knife' at trial. Cf Stewart v Wolfenberger 468 F3d 338, 358 (6th Cir 2006)("The Jury anticipated more than one alibi witness considering the substance of the alibi. Plus the jury surely wondered where the witnesses were especially Ms. Richardson who had been named on petitioner's notice of alibi and who Mr. Engle specially mentioned atleast at voir dire. There was a negative inference against petitioner based on their absence. Given the absence of these witnesses, the jury had good reason to find petitioner's alibi dubious") Sans the 'Butcher Knife' Calton could not convince the jury of the reasonableness of his actions. See Fairman 188 F3d at 648 (Jones, J dissenting)("Questioning the reasonableness of the case in part because the weapon a purportedly long 'Butcher Knife' the victim allegedly possessed was never found"); Vasquez v State 2 SW3d 355, 358-59 (TexApp San Antonio 1999)(Concluding the jury could find force used by defendant not necessary to protect against use of force when victim suffered mul—

Federal Petition For Habeas Corpus Filed In State Court   p. 39 of 40

triple stab wounds and weapon allegedly used by victim was never found") The state's case resembles a house of cards built on the jury crediting the state sponsored fabricated '3 shot theory' and 'made up motive' rather than Calton's self-defense theory that would have been buttressed to viability had the 'Butcher Knife' been made available for trial. Cf Weary V Cain 136 Sct 1002, 1006 (2016) ("Beyond doubt the newly revealed evidence suffices to undermine confidence in Weary's conviction. The state's trial evidence resembles a house of cards, built on the jury crediting Scott's account rather than Weary's alibi"). Materiality of the 'Butcher Knife' is esta-by its bad faith suppression. See U.S. V Jackson 780 F2d 1305, 1311 n.4 (7th Cir 1986) (stating in relevant part: "We are doubtful that any pro-secutor would in bad faith act to suppress evidence unless he or she believed it could affect the outcome of trial"); Tukamote V Romero 620 F2d 781, 788 (10th Cir 1980 ("The good or bad faith of prosecu-tor may well bear on the materiality determination"). The suppression of the 'Butcher Knife' prejudiced Calton's defense because as shown above in its absence he could not establish his innocence. See In re Vial 115 F3d 1192, 1201 n.* (4th Cir 1997) (Hall i J. dissenting) ("No error is more pre-judicial than one that deprives an innocent man of his liberty"

## Prayer - Relief Requested

Petitioner respectfully prays for habeas corpus to issue and habeas relief be granted in the form of a new trial and/or respondent be ordered to show cause why habeas relief should not be afforded

## Verification . Certification

I, declare under the penalty of perjury pursuant to 28 USC § 1746 that the facts herein are true and correct and are based upon personal knowledge or supported by competent evidence Executed on 8-14-23  Allen "F" Calton

Respectfully Submitted,
Allen "F" Calton

Federal Petition For Habeas Corpus Filed In State Court p. 40 of 40

Clerk,                                                    11-20-23

Re: Allen "F" Calton versus Thomas Wilder, et al

   Please find enclosed the original and a copy
and three (3) face pages of :


(1) 42 U.S.C. § 1983 Complaint


    File the original of the same with the
papers of the court that will be in reference
to the above styled cause. Also file
mark each of the three (3) face pages
of the same and apply the civil action
number thereon to each of them and
return to Plaintiff in the S.A.S.E. also enclosed.
If only the original is necessary to initiate this
lawsuit. Please forward back the additional
copy as well. The $402.00 money order to cover
the filing fee will be delivered in a separate envelope.

 -Allen "F" Calton # 1123880            Thank You,
 Powledge Unit                           Allen "F" Calton
 1400 FM 3452
 Palestine, Tx. 75803



Allen Colton T123880
Powledge Unit
1400 FM 3452
Palestine, TX. 75803

PRIORITY MAIL
TRACKED INSURED
UNITED STATES POSTAL SERVICE
For Domestic and International Use

U.S. POSTAGE PAID
FM
TENNESSEE COLONY
TX 75861
NOV 21 2023
$0.00

78102
RDC 03

U.S. District Court
Office of The Clerk
501 West Tenth Street
Fort Worth, Texas 76102

X-RAY

RECEIVED
NOV 28 2023

NOV 21 2023
USPS.COM